[No. 6075.  Decided July 17, 1906.]

ARTHUR A. BOYER *et al., Respondents,* v. J. L. ROBISON, *Appellant.*[1]

QUIETING TITLE—PLEADING—COMPLAINT—CERTAINTY.  In an action to quiet title, it is not error to require a complaint alleging title to be made more specific and certain, or to deny a motion for a bill of particulars, where the claims of the parties are evidenced by written instruments and records, and the defendant was not surprised or misled.

SAME—ABATEMENT AND REVIVAL—TRANSFER OF INTEREST.  In an action to quiet title, plaintiff's conveyance of a portion of the premises during the pendency of the action, does not defeat the right to prosecute the action to final judgment.

1Reported in 86 Pac. 385.

TRUSTS—DEED ABSOLUTE—INTENT. No trust is created in favor of two of the grantor's sons, who were insolvent, by a deed to another son, where it appears that the grantor desired to distribute her property, and was advised that she could not deed the same in trust for such sons without putting the same in reach of their creditors, and thereupon decided, upon legal advice, to deed the same all to the grantee absolutely, leaving him to aid or assist his brothers or not, as he should see fit, but without any obligation so to do.

Appeal from a judgment of the superior court for Walla Walla county, Brents, J., entered July 28, 1905, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action to quiet title. Affirmed.

*Brooks & Bartlett,* for appellant.
*Garrecht & Dunphy,* for respondents.

RUDKIN, J.—This was an action to quiet title. The complaint alleged that the plaintiffs were the owners in fee and lawfully seized and possessed of the premises in controversy, as tenants in common; that the defendant claimed an estate or interest therein adverse to the plaintiffs; and that the claim of the defendant was without right. The defendant appeared in the action and demanded a bill of particulars of the claim set forth by the plaintiffs, an abstract of their title, and, also, a particular statement as to the adverse claim of the defendant. The motion was denied. The defendant then moved to make the complaint more definite and certain by setting forth the nature and duration of the plaintiffs' estate, the character of their possession whether actual or constructive, an abstract of their title, and the nature and character of the estate or interest claimed by the defendant. This motion was likewise denied. A demurrer was next interposed on the ground that the complaint did not state facts sufficient to constitute a cause of action, but the demurrer was overruled. The defendant then answered, denying each and every allegation of the complaint, and alleging affirmatively the nature and extent of his own adverse claim. A

reply was filed by the plaintiffs to the affirmative portions
of the answer.   During the trial a supplemental answer was
filed alleging that the plaintiffs had conveyed a portion of
the land described in the complaint to third persons since
the commencement of the action.   On these issues the court
gave judgment in favor of the plaintiffs according to the
prayer of the complaint, except as to lots 9 and 10 of block
25, of Mountain View addition to the city of Walla Walla.
From this judgment the defendant appeals.

The demurrer to the complaint was without merit, and the
court did not abuse its discretion in denying the demand for
a bill of particulars, or the motion to make the complaint
more definite and certain.   The claim of the respective par-
ties was evidenced by written instruments and records, and
there is no pretense that the appellant was surprised or mis-
led by the claim of title disclosed by the respondents, or by
any lack of information as to the nature of his own claim.
The fact that the respondents conveyed a portion of the land
in controversy after the commencement of the action and
before the trial, did not defeat their right to prosecute the
action to final judgment.   *Box v. Kelso*, 5 Wash. 360, 31
Pac. 973.   That case is not overruled, as contended, by
*Baker v. Northwest Building etc. Co.,* 33 Wash. 677, 74
Pac. 825.   In the latter case the court had under considera-
tion the right of the assignee to be substituted in the place
of the plaintiff, and not the right of the plaintiff to prose-
cute his action to final judgment as against the defendant,
after the assignment.   Furthermore, in this case, the re-
spondents retained an interest in the property notwithstand-
ing their conveyance, because a portion of the purchase price
was withheld until they should remove the cloud from their
title in this proceeding.

The appellant's claim to the property arises out of the fol-
lowing facts:   He contends that one F. D. Boyer acquired
an equitable interest in a part of the property described in
the complaint, under and by virtue of certain deeds from his

mother, Sarah E. Boyer, to his brother E. H. Boyer, and that the appellant acquired a lien on such interest by virtue of certain attachment proceedings set forth in the answer and offered in evidence. The nature of the claim of F. D. Boyer, arising out of the deeds from his mother to his brother E. H. Boyer, can best be described in the language of Mr. Gose, a witness for the appellant and legal adviser to Mrs. Boyer at the time of the execution of the deeds. Mr. Gose testified in substance as follows:

"Mrs. Boyer sent for me to advise with me in regard to making those deeds. She told me that she was thinking of deeding certain property to Eugene, and certain property to other members of the family, and thus dispose of her estate without the necessity of having a will go through probate. She said that Franklin D. Boyer and Charles S. Boyer were so badly indebted that she could not place her property in their hands in such a way that they would get any benefit out of it if she deeded it to them directly, and that she did not want her property to go to their creditors. She asked me if a trust could be created in such a form as would prevent their creditors from getting the property. I told her I though it could, that a binding trust could be created; that I had investigated the subject; but, in as much as that was a question that had never been decided by our supreme court, and there was a difference of opinion among other courts as to the validity of such trusts, I did not feel that I could guarantee it. She then proposed that she deed the property to Eugene in such a way as to do this, without creating any trust whatever. I told her that if she would deed it to him without placing any obligation whatever upon him as to its use, without giving Franklin D. Boyer or anyone else any right or interest in the property, I believed she could undoubtedly make a valid conveyance of that character, leaving it entirely to Eugene to determine what interest they should have in it. But that she must not impose upon him any conditions regarding giving anything to them; that, if she gave the property to him in such shape as that, he would be entitled to use and consume such portions as he saw fit to use in behalf of Franklin D. Boyer or Charles S. Boyer, but that she must not attempt to in any way bind him or seek

to compel him to do anything for them. That if she wished to presume that he, out of the kindness of his heart would be likely to remember them, he could take and handle the property in that way. But I wished her to understand there would be no obligation upon Eugene to do any such thing, and under the circumstances of the case I could not advise her to turn her property over to him in that shape, but left it to her to consider the matter. At a subsequent time she told me she had decided to give the property to Eugene in that way; that her understanding of it was that Eugene was to take the property and assist Franklin if he saw fit, and if he did not see fit he was not to give him anything; that he could take the property and use it to compromise Frank's debts, paying part or none; to get Frank in a position where he could do business free from his obligations, or he could pay Frank any portion or none. Or he could use the property himself in any manner he chose to, and if in the future he prospered from the use of it and he saw fit he might take the property and use it then in any proportion he desired for Frank, but he would not be obligated in any way to use any property for him at any time. That was the understanding I had. I will say also that I wrote the affidavit in this case referred to, and that was the idea I meant loosely to convey at the time I wrote the affidavit."

The other proof offered by the appellant simply tends to confirm this view of the transaction, and without determining whether oral testimony is competent to engraft a trust on a deed absolute in this manner, we are clearly of opinion that F. D. Boyer acquired no interest under the deed to his brother, legal or equitable, which could be reached by attachment or otherwise. This court is asked to create and declare a trust where the grantor in the deed not only failed, but positively declined to do so. The grantor knew that the creditors of F. D. Boyer would take any property that she might give him by direct conveyance, and for that reason she refused to execute such a conveyance. She took legal advice to ascertain if she could create a trust in his favor, which would place the property beyond the reach of his creditors, and her attorney advised against it. She then executed an absolute deed

to E. H. Boyer with the express understanding that the property should not be affected by any trust in his hands. In cases of testamentary disposition, courts often hold that a trust was intended where the language is by no means clear, but they do so in order to effectuate the intent of the testator, never to defeat that intent. The appellant acquired no interest in or claim to property in controversy by virtue of his attachment, and the judgment of the court below is therefore affirmed.

MOUNT, C. J., FULLERTON, HADLEY, DUNBAR, CROW, and ROOT, JJ., concur.