[No. 14362.   Department Two.   May 4, 1918.]

JOHN T. LANIGAN *et al., Appellants*, v. THOMAS W.
MILES, *Respondent*, ETTA LANDIS, *Intervening
Plaintiff and Appellant*.[1]

HUSBAND AND WIFE—SEPARATE PROPERTY—EVIDENCE—SUFFICIENCY
—PRESUMPTION AS TO PROPERTY ACQUIRED AFTER MARRIAGE.  Where a
husband negotiated for property, took the deed in his wife's name,
directed that the word homestead be indorsed on the margin of the
deed, and for twenty-two years thereafter never interfered with his
wife's management and control of the property, and no rights of
creditors intervened, there was sufficient confirmation of the wife's
testimony that it was the intention that she hold it as her separate
property apart from the community; such course of conduct con-
firming the claim of one spouse being sufficient to overcome the
presumption that all property acquired after marriage is community
property.

TRUSTS—EXPRESS TRUST—CERTAINTY.  There is such want of cer-
tainty that a court of equity cannot declare a trust in property
conveyed by an aged woman by deed absolute to one of her sons, in
full confidence that, on her death, such son "would make proper
adjustment" of her relations to her other children, "leaving such
adjustment solely and exclusively" to such son without any inter-
ference by any of the other children.

Appeal from a judgment of the superior court for
King county, Jurey, J., entered January 25, 1917, in
favor of the defendant, dismissing an action for equita-
ble relief, upon stipulation.  Affirmed.

*Vanderveer & Cummings, H. McC. Billingsley*, and
*Welch & Dorr*, for appellants.

*Jones & Riddell*, for respondent.

*Farrell, Kane & Stratton*, for intervener and ap-
pellant.

CHADWICK, J. — Thomas W. Miles and his wife,
Catherine, natives of Ireland, were married in the state

[1]Reported in 172 Pac. 894.

of Pennsylvania. They came to the state of Washington in 1861 and settled near Vancouver. They purchased a farm. The title to the land was taken in the name of Catherine Miles. In 1875, the family, then consisting of the parents and six children, Mary, afterwards Mary Lanigan, the mother of the plaintiffs, Etta, now Etta Landis, the intervener, John, James, Catherine W. and Thomas W., moved to Newcastle, in King county, while the father and two of the boys worked in the coal mines. The mother for a time kept boarders, the older girls working in and about the house. The family moved to Seattle in 1880, where they purchased lot 3, block G, of A. A. Denny's addition to Seattle, for the sum of $1,000. The purchase price was paid in cash. Thomas Miles went to work in the yards of his old employer, the Columbia and Puget Sound Railroad Company. He continued in this service for about twenty years, or until one year before his death, which occurred in 1902. After the fire of 1888, a hotel building was built on lot 2 at a cost of $6,500. To meet this obligation, two mortgages were executed, one for $2,500, in favor of Alonzo F. Hill, the other for $4,000, in favor of one Bersch, a son-in-law, then husband of intervener, Etta Landis. These mortgages were executed by Catherine Miles and Thomas Miles. The obligation represented by the Hill mortgage was later renewed. When renewed, the note and mortgage were signed by Catherine Miles alone. Mr. Bersch operated the hotel, and his mortgage was absorbed by credits for rent. In 1891 or 1892, he and his wife gave up the hotel, which was thereafter conducted by Mrs. Miles.

In 1897, a Mrs. Welsh, a friend of the family, gave Mrs. Miles lot 3, in block 37, A. A. Denny's addition. This property was later improved with a building suitable for a rooming house, with stores on the ground floor. In 1902, at a time when all the children were of

full age, Thomas Miles, the father, died intestate. No petition for the administration of his estate was ever filed. Mrs. Miles ·continued to operate the two properties until 1907, when she deeded both lots to her son Thomas W. Miles, who has since conducted the business as his own. The deed to Thomas W. Miles is in form a warranty deed without exceptions or limitations. It purports to convey the full title. In 1909, Mary Lanigan, the oldest daughter, brought an action, her sister Etta Landis being joined as plaintiff, against her mother and her brothers, John, James, and Thomas W., and her sister Catherine, to have apportioned and set aside to them a one-twelfth (1-12) interest in the property as an estate of inheritance from their father, Thomas Miles. They set up the intestacy of the father, that no administration of his estate had been had, that there were no debts, and no reason for an administration, and asked that their respective shares be set aside to them. Issues were joined, the defendants denying that the property was other than separate property of Catherine Miles, and affirmatively alleging that Catherine Miles had conveyed the property to her son Thomas W. as the owner, and the plaintiffs had no interest as owners or otherwise therein.

The case never came to trial, but was dismissed upon stipulation of counsel after issue joined. Mrs. Landis now disclaims any interest in the action brought by Mrs. Lanigan, and repudiates the authority of the attorney of record, and while we think the record hardly bears her out in this, our view of the case is such that we may admit that she is right in her contention and that the. judgment of dismissal did not operate as an· estoppel against her, or as *res adjudicata* of her right to intervene in this case. And we may also admit that the present plaintiffs, although prosecuting the action as the heirs at law of Mary Lanigan, deceased, are not

estopped by the record of the former case to maintain this action to recover their mother's share of the joint estate of Thomas and Catherine Miles.

We are referring to the former action solely for the purpose of introducing the deposition of Catherine Miles, taken while that action was pending and for use at the time of the trial, if her death should occur before the case could be heard. Mrs. Miles there testified that she was the owner of the property, that she had bought it with her own savings, that it had always been understood between her husband and herself that he had no interest in it, and that he did not want any.

The testimony of Mrs. Miles is borne out by the records. The title to the Seattle property was taken in her name, the word "homestead" was indorsed on the margin of the deed, and if, as Mrs. Landis, the intervener, insists, Mr. Miles negotiated the trade and Mrs. Miles had nothing to do with it, it would seem to be clear that the case would fall within the rule of several of our own decisions. It is undisputed that Mrs. Miles, although unable to read or write, transacted all business pertaining to the property, that it was assessed in her name, she paid the taxes, and as the property was improved, she met all taxes and assessments of a special or local character, and discharged the mortgages out of the earnings of the building. There is no testimony which even tends to show that the husband, whose pay never exceeded $75 a month, ever paid or contributed anything to the improvement or upkeep of the property. If he ever kept a bank account or participated in any one business transaction, it is not recalled by any of the witnesses. The only testimony going to the disposition of his earnings is that of Mrs. Miles, who says that he never earned more than enough to support the family.

Counsel rely with seeming confidence upon several of our own decisions holding upon the premise of the presumption that all property acquired after marriage is community property, and that testimony must be clear and the fact apparent that the husband intended to divest himself and the community of all interest in the property and to set it apart to the separate use of the wife before a court will so hold.

Reference to the opinions of this court will show that we have built up two lines of decisions covering the right of one or the other of married persons to assert a separate interest in property. In the one line, the court has had to do with the claims of creditors or the interests of third persons having some tangible equity in or lien upon the property sought to be recovered or levied upon. In the other line, the court has had to deal with husband and wife as free contracting agents, unhampered and unhindered by the claims of creditors or by any one having direct interest in, or lien upon, the property. In all of the first line of cases, the court has had to deal with circumstances which, if unexplained by testimony at once clear and convincing, would amount to badges of fraud. In the second line of cases, it appears that a husband and wife may freely contract, or give one to the other, and thus provide for the holding of property then or thereafter to be acquired as a separate estate.

To make ourselves clear, if the property herein involved had stood in the name of Thomas W. Miles, and he had been the active agent in the care, management, and disposition of it during his lifetime, his widow, or any one claiming under her, would be put to a greater burden than a mere preponderance of the testimony, if it were claimed that the property was her separate property, for the husband's conduct with reference to the property would have been consistent with the

usual practice, and not inconsistent with the ordinary methods of management of community property, funds, or business. But where a course of dealing between spouses, and this running over a period of from thirty to fifty years, is consistent—is not only consistent with, but confirmatory of the claim of the one who asserts a separate estate—we see no reason for saying that the presumption that all property acquired after marriage is community property is not overcome, at least, to the extent of putting a burden on the one who asserts the contrary.

The community property law as originally enacted seems not to have contemplated gifts or contracts between husband and wife with reference to community property, or that community property could ever be given the status of separate property. But by gradual accretion it is now provided that every married person may acquire, hold, enjoy, and dispose of property as if he or she were unmarried. Rem. Code, § 5925. The husband and wife may contract with reference to the status or disposition of property. Rem. Code, § 5919. A *bona fide* purchaser of property from the holder of the record title will be protected (Rem. Code, § 8771); and one spouse may convey directly to the other by deed (Rem. Code, § 8766).

If a husband can convey directly to a wife, it would seem that, if he procures a deed in her name and so conducts himself with reference to the property as to evidence no claim or interest in it, we see no reason why the deed from the stranger should not, as between the spouses, there being no creditor present and objecting, be given the same legal effect as if the property had been deeded to the husband and by him in turn to his wife.

Counsel's main reliance is: *Abbott v. Wetherby,* 6 Wash. 507, 33 Pac. 1070, 36 Am. St. 176; *Fielding v.*

*Ketler,* 86 Wash. 194, 149 Pac. 667. The right of a creditor, a third party, was involved in each of these cases. An understanding on the part of the spouses, or either of them, was not permitted to overcome the presumption afforded by the statute, and it was held that, as against creditors, existing or subsequent, a husband and wife should not be permitted to deal between themselves by any secret understanding, for the statute affords a method by which the property may be placed by the one spouse in the hands of another.

The distinction we have endeavored to make is clearly drawn in *Marsh v. Fisher,* 69 Wash. 570, 125 Pac. 951, where the spouses had entered into an agreement that the husband would operate a threshing machine and receive the proceeds as his separate property, and the wife would run the farm, receiving the proceeds thereof as her separate property. The court maintained the right of a creditor, who had no notice of the agreement, to satisfy an execution out of property claimed by the wife. After noting the rule of *Yake v. Pugh,* 13 Wash. 78, 42 Pac. 528, 52 Am. St. 17, and *Dobbins v. Dexter Horton & Co.,* 62 Wash. 423, 113 Pac. 1088, holding that a husband and wife may agree between themselves as to the character of their earnings and property, the court fixed a limitation of the rule, i. e., that such agreements will not affect the rights of creditors existent at the time of the agreement, or subsequent creditors where the parties continue to live together. Our most recent opinion covering this phase of the law is *Union Sav. & Trust Co. v. Manney,* 101 Wash. 274, 172 Pac. 251.

The plaintiffs and intervener can claim no greater right in the property than Thomas Miles could have claimed in his lifetime. The fact that he negotiated the purchase—accepting the testimony of the intervener as true, and granting for the nonce that the pur-

chase price was paid out of the earnings of the community, a fact denied by Mrs. Miles in her lifetime—and caused his wife's name to be inserted as grantee—an unusual thing—and directed the word "homestead" to be indorsed on the margin of the deed, when coupled with the fact that he never thereafter had aught to do with the property, except to live there with his wife and family, and this over a period of twenty-two years, gives confirmation to Mrs. Miles' testimony that it was the intention of her husband to comply with her desire to have her own home and her own property separate and apart from the community, even to the waiver of his interests.

We may go further and say:

"It is true that, if we look in this evidence for some such specific agreement at some specific time, we may not be able to find it in clear and formal language; but taking her testimony as to the general understanding between herself and husband, in contradiction of which there is not a syllable of evidence, and the fact of the management of her earnings and the property acquired thereby without the slightest control of or interference by her husband, we cannot escape the conclusion that it was at all times since their marriage well understood by both of them that her earnings were to be her separate property." *Dobbins v. Dexter Horton & Co.,* 62 Wash. 423, 113 Pac. 1088.

See, also, *Ballard v. Slyfield,* 47 Wash. 174, 91 Pac. 642. The status of the property being fixed at the time it was purchased. *In re Deschamps' Estate,* 77 Wash. 514, 137 Pac. 1009; *Guye v. Guye,* 63 Wash. 340, 115 Pac. 731, 37 L. R. A. (N. S.) 186.

We hold that the property, lot 3, block G, was the separate property of Catherine Miles, and that the title, as well as the title to lot 3, in block 37, rests in defendant, Thomas W. Miles, unless, as plaintiffs and the intervener contend, the property was deeded in

trust for the benefit of all the heirs. Like the trial judge, we have had some difficulty in following the theory of counsel. They have not committed themselves, but argue generally that the trust is an express trust, or if not an express trust, a constructive trust, or if neither of these, a trust *ex maleficio*. We think, without pursuing the arguments of counsel, that plaintiffs and the intervener must recover, if at all, on the theory of an express trust. It has long since been settled as the law in this state that an express trust must be evidenced in writing. The evidence relied upon to create a trust is found in the answer filed in the suit brought by Mrs. Lanigan, in which the intervener was joined as plaintiff to recover a share of their father's estate. The answer was subscribed by Thomas W. Miles, the grantee in the deed.

After setting up that the property had been bought with the earnings and savings of Catherine Miles, and the agreement between her and her husband that the property was to be her separate property, and that it had ever since been so treated, defendants further alleged:

"The defendant Catherine Miles is an old lady, being more than seventy-five years of age, and on or about the 21st day of June, 1907, deeming that her time on earth was limited, of her own will, and without any influence from any person on earth, went to the office of Richard Saxe Jones, an attorney in the city of Seattle, county of King and state of Washington, and requested him to prepare a deed to her youngest son, Thomas W. Miles, of the entire property known and described as lot three (3) in block 'G' of A. A. Denny's addition to the city of Seattle, which deed was then and there prepared by said Jones, signed and executed by the defendant Catherine Miles, and delivered to Thomas W. Miles, her son, freely and voluntarily, as the express will and desire of said Catherine Miles, and said Catherine Miles then and there expressing to her attorney her full confidence

that upon her death the said Thomas W. Miles would make proper adjustment of her relations as mother to the plaintiffs and defendants in this action, leaving such adjustment solely and exclusively to the said Thomas W. Miles without any interference of any kind by any of the other children of said Catherine Miles.''

These allegations were denied in the reply, excepting in so far as it was alleged that Catherine Miles had deeded lot 3 in block G to defendant, Thomas W. Miles.

Granting that a trust may be declared, or rather acknowledged, by a trustee by a subsequent writing, even though informal (*Holmes v. Holmes,* 62 Wash. 572, 118 Pac. 733, Ann. Cas. 1913B 1021, 68 L. R. A. (N. S.) 645), and that a declaration in an answer filed in a suit involving the same subject-matter but for different relief is sufficient to satisfy the statute of frauds, we still think that the declaration relied on is not enough to charge the defendant, Thomas W. Miles, as a trustee. Although bent with years, Mrs. Miles was under no disability of mind; indeed, her testimony, taken in the former action, shows that she was keenly alert to her own interests and mindful of her own intentions. If the answer were no more than an admission that the deed had been made by Catherine Miles in ''full confidence that upon her death the said Thomas W. Miles would make proper adjustment of her relations as mother to the plaintiffs and defendants in this action,'' it might be that the admission would support an offer of oral proof to make the several shares or interests certain, to the end that the true intent and purpose of the trustor should be carried out. In that event, a court could reasonably hold that it was the intention of the donor that each child should take an amount or interest equal to its inheritable interest. But the answer proceeds, ''Leaving such adjustment solely and exclusively to the said Thomas W. Miles

without any interference of any kind by any of the other children of Catherine Miles.'' Keeping in mind that this answer was filed after the deed was made, and that the testimony of Catherine Miles was taken pending a trial, and that she was interrogated by counsel upon the subject of a trust, that there was no offer to amend the complaint or, after the dismissal of the suit, any action brought by either of the then plaintiffs to declare a trust, and that Mrs. Miles lived five and one-half years thereafter, herself making no complaint that her intentions were not being carried out, we think the case falls squarely within the principle announced in *Boyer v. Robison,* 43 Wash. 97, 86 Pac. 385, which is to be read as a part of this opinion. The court there said: ''this court is asked to create and declare a trust where the grantor not only failed, but positively declined to do so,'' which is but another way of saying that an express trust will not be declared as against a deed absolute, unless the intention of the grantor is clear and the interest of the one claiming as *cestui que trust* is made to appear with reasonable certainty. In other words, a court of equity will not declare a trust unless the object of the trust and the extent of interest could be enforced by a decree of the court, not as a matter of equity, but as the certain will of the trustor.

''If there is an absolute conveyance of the legal title to a supposed trustee, and there is no declaration of a trust prior to or at the time of the conveyance by the grantor, and the *cestui que trust* attempts to charge the grantee with a trust in respect to the land, he must produce some writing signed by the grantee of the legal title in order to charge him with the trust. It is only when there is no dispute concerning the existence of a trust, or when the trust arises by operation of law as a resulting or implied trust, that the *cestui que trust* himself can declare its terms.'' Perry, on Trusts (6th ed.), § 83.

"Wherever therefore the objects of the supposed recommendatory trusts are not certain or definite, wherever the property to which it is to attach is not certain or definite, wherever a clear discretion and choice to act or not to act is given, wherever the prior dispositions of the property import absolute and uncontrollable ownership,—in all such cases courts of equity will not create a trust from words of this character." Story, Equity Jurisprudence (13th ed.), § 1070.

"Nor will a trust be implied if there is uncertainty as to the property to be subjected to the trust, or as to the persons to be benefited by the trust, or as to the manner in which the property is to be applied. Lord Alvanley stated the rule to be 'that a trust would be implied only where the testator points out the objects, the property, and the way in which it shall go.' If the subjects and objects of the supposed trust are left uncertain by a testator, the court will infer that no obligation was intended to be imposed upon the donee, but that the whole disposition was left to his discretion. So if a mere power to appoint is given to the first taker, to be exercised or not at his discretion, no trust will be implied. And no trust will be implied, if, taking the whole instrument and all the circumstances together, it is more probable than otherwise that the testator intended to communicate a discretion and not an obligation." Perry, Trusts (6th ed.), § 116.

In *Wright v. Atkyns,* 1 Turn. & Russ. 143, 157, Lord Eldon said, that in order to determine whether a trust of this sort is a trust which a court of equity will interfere with, it is matter of observation, first, that the words should be imperative; secondly, that the subject must be certain; and thirdly, that the object must be as certain as the subject.

The words of the answer which are relied on as an acknowledgment of a trust are that Thomas W. Miles "would make proper adjustment" and "leaving such adjustment solely and exclusively to the said Thomas

W. Miles without any interference of any kind by any of the other children of said Catherine Miles.'' These words are similar to words often employed by grantors and makers of wills, and are as frequently relied on by those who undertake to have a recommendatory trust declared. In *Knight v. Knight,* 3 Beav. 148, 174, Lord Langdale, after subscribing to the formula that a trust would not be declared upon a recommendation unless the words used upon the whole ought to be construed as imperative, that the subjects of the recommendation are certain, and that the objects or persons intended to have the benefit of the recommendation are certain, considered the words ''free and unfettered.'' We take it that words, when relied on as an acknowledgment of a trust, are to be given no greater weight than similar words used in deeds and wills. We also think it will not be denied that the words relied on in this case are the legal equivalent of the words ''free and unfettered.'' Of these words, his Lordship says:

''Any words by which it is expressed or from which it may be implied, that the first taker may apply any part of the subject to his own use, are held to prevent the subject of the gift from being considered certain; and a vague description of the object, that is, a description by which the giver neither clearly defines the object himself nor names a distinct class out of which the first taker is to select, or which leaves it doubtful what interest the object or class of objects is to take, will prevent the objects from being certain within the meaning of the rule.''

Finding nothing in the record that would indicate that Mrs. Miles did not have a lively interest in her affairs, we feel warranted in adopting the language of the supreme court of the state of Connecticut in *Gilbert v. Chapin,* 19 Conn. 342:

''We must presume, that the testator well knew the difference between a direction and a request—between

an imperative disposition of his estate and a mere recommendation; and having, as owner of the property, equal power to direct as to recommend, that he meant what he said. We cannot safely interpret written instruments, deliberately and solemnly made, upon any other hypothesis; and when we depart from this, we shall find ourselves employed rather in the making of wills and deeds, than in giving them effect, when made by others.''

Finding no error, the decree is affirmed.

ELLIS, C. J., MOUNT, and HOLCOMB, JJ., concur.