[No. 30832. Department Two. June 9, 1949.]

J. E. HOFFMAN et al., Respondents, v. TIETON VIEW COMMUNITY METHODIST EPISCOPAL CHURCH, Appellant, PACIFIC NORTHWEST ANNUAL CONFERENCE OF THE METHODIST CHURCH, Respondent.[1]

[1]Reported in 207 P. (2d) 699.

*D. V. & Lane Morthland,* for appellant.

*G. Robert Huston,* for respondents J. E. Hoffman *et al.*

*Gavin & Robinson,* for respondent Pacific Northwest Annual Conference of the Methodist Church.

JEFFERS, C. J.—This is an appeal by defendant Tieton View Community Methodist Episcopal Church, a Washington corporation (hereinafter referred to as Tieton View), from a judgment made and entered by the superior court for Yakima county on September 4, 1948.

J. E. Hoffman and wife instituted an action in the above court against Tieton View and Pacific Northwest Annual

Conference of the Methodist Church, a Washington corporation (hereinafter referred to as the Conference), for the purpose of quieting plaintiffs' title to the following described property:

"That part of the north half of the northeast quarter of the northeast quarter of Section 27, Township 13 North, Range 17 E. W. M. beginning at the southeast corner of said subdivision; running thence north along the east line thereof 10 rods; thence west at right angles 8 rods; thence south and parallel to the east line of said subdivision 10 rods; thence east to the point of beginning; containing one-half acre."

The complaint in substance alleges that plaintiffs are the owners of the following described property:

"The north half of the northeast quarter of the northeast quarter of Section 27, Township 13 North, Range 17 East of the Willamette Meridian, together with all water, water rights, ditches and conduits thereunto belonging or used in connection therewith, and together with the tenements, hereditaments and appurtenances thereunto belonging;"

that defendant Tieton View, by a written lease dated April 12, 1926, leased from plaintiffs' predecessors in title, Theron Earl Stone and Perle Burnham Stone, that portion of the real estate owned by plaintiffs first hereinabove described; that the lease was, on July 14, 1944, duly assigned to plaintiffs by the lessors.

It is further alleged that Tieton View is an ecclesiastical corporation, organized under the laws of the state of Washington, and by virtue of its articles of incorporation is subject to, and organized in accordance with and by, the doctrines, laws, usages, and ministerial appointments of the Methodist Episcopal Church as from time to time established, made, and instituted by the lawful authorities of such church and its successors; that the lease, which was attached to and by reference made a part of the complaint and marked exhibit A, was entered into by defendant Tieton View pursuant to the authority conferred upon it by its articles of incorporation and the Discipline of the Methodist Episcopal Church, and for the uses, purposes, and

limitations set out in its articles of incorporation and Disciplines.

It is further alleged that, at a united conference held at Kansas City, Missouri, on May 10, 1939, at which were present the three uniting churches, namely, Methodist Episcopal, Methodist Episcopal Church South, and Methodist Protestant Church, acting through their duly authorized representatives, the three churches united according to the Disciplines of the various constituent bodies into one church and adopted the name "The Methodist Church"; that the plan of union as set out in the 1944 Discipline of the Methodist Church was adopted as the constitution of the united church, the Methodist Church; and that, by reason of such constitution and enabling acts as adopted at the conference, the Methodist Church is the legal and ecclesiastical successor of the Methodist Episcopal Church, and is the governing and regulatory body to which defendant Tieton View is subject and holds its authority and religious existence.

It is further alleged that the Discipline of the Methodist Church and the Methodist Episcopal Church is the official and published statement of the constitution and law of the Methodist Church, its rules of organization and procedure, the description of administrative agencies, and their functions and its rituals.

The allegations of paragraph 6 of the complaint are substantially as follows: That the defendant Conference is an ecclesiastical nonprofit corporation, organized under the laws of the state of Washington, and is the ecclesiastical agency by which the Methodist Church operates in the state of Washington; that defendant Tieton View is subject to the direction of the Conference in its ecclesiastical and temporal affairs by virtue of the articles of incorporation of defendant Tieton View and of the Discipline of the Methodist Church; that defendant Tieton View had knowledge of paragraph 362 in the Discipline of the Methodist Church for the year 1924, which provides:

"Whenever it shall become desirous or necessary to discontinue or abandon such location it shall be the duty of the trustees and members of such local society, when so author-

ized and directed by a two-thirds vote of the Annual Conference within the bounds in which it is located, and with the consent of the resident Bishop and a majority of the district superintendents, to sell such property and pay over the proceeds to the said Annual Conference,"

and paragraph 363 of such Discipline for the year 1924:

"In all cases where church property is abandoned, or no longer used for the purpose originally designed, it shall be the duties of the trustees, if any remain, to sell such property and pay over the proceeds to the Annual Conference within the bounds wherein it is located,"

and paragraph 255 in the 1944 Discipline of the Methodist Church, to wit:

"With the consent of the presiding bishop and of a majority of the district superintendents and of the district Board of Church Location and Building of the district in which the action is contemplated, the Annual Conference may declare any charge or church within its bounds discontinued or abandoned. Upon a charge or church's being thus discontinued or abandoned, it shall be the duty of its Board of Trustees to make such disposition of the property thereof as the Annual Conference shall direct, and if no such lawful trustees remain or if for any reason said trustees fail to make such disposition, then it shall be the duty of the trustees of the Annual Conference to sell or dispose of said property in accordance with the direction of the Annual Conference;"

that defendant Conference, by official action of such corporation at its annual session held in June, 1947, in Tacoma, Washington, discontinued defendant Tieton View as a preaching point or church, declared the lease (exhibit A) referred to herein abandoned, terminated all the rights of defendant Tieton View in such leasehold, and ordered that the parsonage building erected thereon be sold to the highest bidder and the proceeds turned over to defendant Conference.

It is further alleged that the lease entered into between defendant Tieton View and plaintiffs' assignors was so made and entered into for the purpose of building a parsonage upon the real property, for the use and occupancy of a minister of the Methodist Episcopal Church thereafter to be

assigned to Tieton View; that a parsonage was thereafter erected on the property and used as a residence for the minister assigned to Tieton View by defendant Conference as long as ministers were assigned to that preaching point.

It is further alleged in paragraph 9 that thereafter such preaching point was discontinued by the defendant Conference, and that defendant Tieton View ceased to function as a Methodist Church organization or as a church organization of any denomination; that the ministerial and ecclesiastical purposes for which the lease above referred to was entered into were discontinued by all the defendants; that thereafter the premises were used by persons unknown for miscellaneous purposes not connected with Tieton View, but such uses were outside of and beyond the purposes intended by the lease and the purposes designated by the laws, customs, usages, and Disciplines of the Methodist Episcopal Church and its successors.

It is further alleged that Tieton View has abandoned such lease, in that it has failed and neglected to keep the parsonage erected thereon in good condition; that the premises have been allowed to grow up in weeds, making the same an eyesore and nuisance in the community; that the parsonage building has been neglected and has fallen into a state of disrepair; that defendant Tieton View has attempted to rent out and did sublet said building without the written consent of plaintiffs being secured.

It is further alleged in paragraph 11 that by reason of the acts herein alleged the leasehold has been abandoned within the intent and purpose of the lease, and particularly the following provision thereof:

"Upon the expiration of this lease or the abandonment of said property by the lessee, the immediate right of possession of said property and the full title thereto shall revest in the lessors, their heirs or assigns."

Tieton View demurred to the complaint on all statutory grounds. Defendant Conference filed an answer and cross-complaint, and by its answer admitted all of plaintiffs' allegations contained in paragraphs 1 to 9, inclusive. As to

paragraph 10, defendant Conference admitted that the preaching point known as the Tieton View Community Methodist Episcopal Church was in fact discontinued by the Conference, that defendant Tieton View ceased to function as a Methodist Church organization or as a church organization of any denomination, and that thereafter defendant Conference no longer assigned ministers to Tieton View. As to the other allegations of paragraph 10, defendant Conference alleged that it had insufficient information in regard thereto upon which to form a belief. This defendant also admitted that the property covered by the lease has been abandoned by Tieton View, and admitted that it has no interest in such real property as distinguished from the building situated thereon.

By its affirmative defense, defendant Conference made certain allegations, based upon which it asked that title to the parsonage building and personal property of Tieton View situated therein be quieted in it; that Tieton View and its trustees be directed to deliver the possession of such parsonage building and personal property to defendant Conference; and that the interest of defendant Tieton View be declared and adjudged to be junior and inferior to the interest of defendant Conference.

The claim of defendant Conference is based upon certain provisions in the articles of incorporation of Tieton View and upon certain provisions in the Disciplines of the Methodist Church, particularly paragraphs 362 and 363 of the 1924 Discipline and paragraph 255 of the 1944 Discipline, which paragraphs are hereinbefore set out, and which are referred to and set out in the cross-complaint of defendant Conference, and on the further allegation that, at the annual session of the Conference in June, 1947, at Tacoma, Washington, this defendant discontinued defendant Tieton View as a preaching point, declared that the lease herein referred to was abandoned, and terminated all the rights of Tieton View in the leasehold, directing Tieton View to dispose of the parsonage building erected upon the premises to the highest bidder for cash and turn over the proceeds to defendant Conference.

It is further alleged in the cross-complaint that Tieton View has failed and refused to comply with the above order and direction of defendant Conference, but has at all times maintained a complete disregard for all the rights of this defendant in the property.

Defendant Tieton View also demurred to the answer and cross-complaint of defendant Conference.

Thereafter, on April 19, 1948, the court entered an order overruling Tieton View's demurrer to the third amended complaint of plaintiffs, and on June 24, 1948, entered an order overruling the demurrer of Tieton View to the answer and cross-complaint of defendant Conference. Tieton View having refused to further plead, the court, on September 4, 1948, made and entered a judgment canceling, setting aside, and holding for nought the lease heretofore referred to, decreeing that the defendants Tieton View and the Conference have no right, title, claim or interest in and to the real property described in the lease, and quieting the title thereto in plaintiffs as against the defendants and their successors in interest. It was further decreed that the interest of Tieton View and its trustees in and to the parsonage building and personal property situated on such real estate is junior and inferior to that of the Conference, that the title to the parsonage building and personal property should be quieted in the Conference, and that Tieton View and its trustees should forthwith deliver possession of such parsonage building and personal property to defendant Conference. It was further decreed that within ninety days after the entry of the judgment, defendant Conference should remove from the described real estate the parsonage building and personal property situated thereon.

It is from this judgment that defendant Tieton View has appealed.

Error is assigned in overruling appellant's demurrer to the complaint of respondents Hoffman, and in overruling its demurrer to the cross-complaint of respondent Conference, for the reason and on the ground that neither the

724

complaint nor cross-complaint states facts sufficient to constitute a cause of action against appellant. Error is also assigned in entering judgment in favor of respondents on their pleadings, upon appellant's refusal to plead further.

The complaint of respondents Hoffman is based upon the theory that both appellant and the Conference have abandoned or surrendered the lease, not only by a course of conduct pursued with respect to the real estate, but by the official action or procedure of the Conference.

Appellant states that it holds the legal title to the building and the real estate, so far as the parties here are concerned, under and by virtue of article VII of its articles of incorporation, which states:

"The corporation shall have the power to acquire, hold, improve, encumber, exchange, sell and convey, and dispose of property, both real and personal, in fee simple or otherwise, and shall also enjoy all of the powers conferred on such like corporations under and by virtue of the laws of the state of Washington."

Appellant further states that, under article III of such articles, it is empowered to hold the title to property for the following purpose:

"The object and purpose for which the corporation is formed is to promote religious, social, recreational and educational development of its members and of the community."

Appellant then states that the lease itself provides that the property shall always be used for "church, charity, literary or community purposes." The actual wording of the lease is: "The said property shall never be used for any other than church, charity, literary or community purposes."

Appellant then argues that it is clear that an ecclesiastical or religious purpose is only one of the objects for which appellant was formed and for which the lease was made, and that for this reason the action of respondent Conference, as pleaded, in abandoning appellant's premises as a preaching point can be effective to extinguish only one of the purposes. Appellant further argues that at the best the

Conference is merely a beneficiary of an express trust, of which appellant is trustee, and that such trust can be terminated only under certain conditions.

It is further stated in appellant's brief that, while the beneficiary of an express trust may, as a general rule, cause the trust to be terminated, it can do so only when all the purposes for which the trust was created have been performed or have become impossible of performance, citing 54 Am. Jur. 77, § 75. Appellant then states that the action of the Conference in discontinuing appellant as a preaching point cannot be effective to divest the property rights of appellant for two reasons:

"First, as stated above, that action terminates only one of the purposes for which the appellant was formed and for which it holds the property in trust.

"Secondly, the members of the appellant corporation and community in which it is situated are also beneficiaries of the trust purposes set up in both the lease and in the appellant's articles of incorporation and there is no allegation in the pleadings of either respondent that those beneficiaries have renounced the trust;"
and further that

"It seems clear that the members of the appellant corporation and of the community in which it is situated have such beneficial interest in the matter as to require their consent to any disposition of the property."

We desire to first quote article VIII of appellant's articles of incorporation:

"All property acquired by the corporation shall be held in trust, subject to the doctrines, law, usages and ministerial appointments of the Methodist Episcopal Church, as from time to time established, made and declared by the lawful authority of said church; and after the said property shall be sold or encumbered, the proceeds of sale or encumbrance shall be applied according to the provisions of the law of the church relating thereto."

Inasmuch as the lease must govern the relationship of appellant and respondents Hoffman, let us examine and discuss appellant's trust theory, advanced not only as a defense to its refusal to dispose of the parsonage built on the property here involved, in accordance with the direction

of the Conference, but also as a defense to the action of respondents Hoffman to quiet title to the real estate.

The lease is in form an ordinary lease between the assignors of respondents Hoffman and Tieton View. The term is for ninety-nine years, and was granted upon certain terms and conditions. The lessors reserved to themselves certain water rights. Lessee was to pay taxes, if any, levied against the property during the period of the lease, and also any local improvement district assessments which might be levied against the property. The lease could not be sold or assigned, nor the property or any part thereof sublet, without the written consent of lessors having first been secured and endorsed on the lease or attached thereto. It provided that the lease could be canceled upon its expiration or the abandonment of the property, in which event the immediate right of possession and full title to the property would revert to lessors, their heirs or assigns. The lease further provided that, if there was a bona fide successor to the lessee at the time of the expiration of the lease, such lessee was to have ninety days to remove improvements placed on the property.

We are of the opinion that, as between the lessors and appellant, this instrument was a lease, and created the relationship of landlord and tenant as between the parties thereto. In our opinion there was no intention to create, nor did such lease create, any trust relationship as between lessors and appellant or the community.

Before a trust will be found to exist, there must be a clear manifestation thereof. This means an intention to create a trust and not to do something else. 54 Am. Jur. 44, 45, § 33. The entire instrument and its general purpose and scope may, and where necessary should, be considered, and its various parts compared. The instrument should be construed in the light of the situation and circumstances surrounding its execution. 54 Am. Jur. 63, 64, § 53.

We have held that, to establish an express trust, the evidence must be clear and satisfactory. See *Kinney v. McCall,* 57 Wash. 545, 107 Pac. 385; *Lanigan v. Miles,* 102 Wash. 82, 172 Pac. 894.

■ This instrument was an ordinary short-form lease, for a term of years with a nominal rental. It contained the usual covenants for use and occupancy, with a provision for re-entry on breach of the covenants. It seems apparent to us that none of the parties to the instrument thought that a trust relationship was being created, as it is alleged in the complaint that the object in procuring this land was

". . . for the purpose of building a parsonage upon said above described real estate for the use and occupancy of a *minister* of the Methodist Episcopal Church thereafter to be assigned to said Tieton View Church." (Italics ours.)

We conclude that this instrument was a lease entered into between the lessors, to whose rights the Hoffmans have succeeded, and Tieton View, primarily for the purpose of providing ground for the erection of a parsonage for a minister of the Methodist Episcopal Church thereafter to be assigned to Tieton View.

Having reached the above conclusion, we are next confronted with the question of whether the terms and conditions of the lease have been violated by the lessee, so as to permit a re-entry by the landlord, or whether the Methodist Church, through its representatives, was authorized to terminate the lease and cause an abandonment thereof, in so far as Tieton View was concerned.

We shall first discuss the relation between Tieton View and the Methodist Church, represented in this state by the Conference, the action taken relative to this lease by the Conference, and its binding effect on Tieton View, all as alleged by either respondents Hoffman or the Conference.

■ Tieton View entered into the lease under and by virtue of the powers granted to it by its articles of incorporation and the Discipline of the Methodist Church. There is no question in our minds but that all property acquired by Tieton View was, under article VIII of its articles of incorporation hereinbefore set out, held in trust for the uses of the Methodist Church, subject to the doctrines, laws, usages, and ministerial appointments of such church, as from time to time established, made, and declared by the lawful authority of the church.

It is alleged in paragraph 8 of the cross-complaint of the Conference that in June, 1947, the Conference, by official action of such corporation, discontinued the appellant as a preaching point and declared the lease herein referred to abandoned; that the Conference further terminated all the rights of Tieton View in such leasehold and directed Tieton View to dispose of the parsonage building to the highest bidder for cash and turn the proceeds over to the Conference.

It is further alleged that Tieton View had knowledge of the provisions of the Disciplines hereinbefore set out.

There is no question but that the Conference is the official representative of the Methodist Church in this state, and that it purported to, and did, under what we believe to be proper authority, discontinue appellant as a preaching point and direct the abandonment or surrender of this lease, a sale of the parsonage by appellant, and a surrender of the proceeds to the Conference.

In *Wilkeson v. Rector, etc. St. Luke's Parish,* 176 Wash. 377, 384, 385, 29 P. (2d) 748, it is stated:

"In the absence of fraud, where the right of property in a civil court is dependent on the question of doctrine, discipline, ecclesiastical law, rule or custom, or church government, and that has been decided by the highest tribunal within the organization to which it has been carried, the civil court will accept that decision as conclusive, and be governed by it in its application to the case before it."

Perhaps the leading case on the question now being discussed is *Watson v. Jones,* 80 U. S. 679, 20 L. Ed. 666, which case is cited and referred to in the *Wilkeson* case, *supra.* We quote from the *Watson* case:

"The questions which have come before the civil courts concerning the rights to property held by ecclesiastical bodies, may, so far as we have been able to examine them, be profitably classified under three general heads, which of course do not include cases governed by considerations applicable to a church established and supported by law as the religion of the state.

"1. The first of these is when the property which is the subject of controversy has been, by the deed or will of the

donor, or other instrument by which the property is held, by the express terms of the instrument devoted to the teaching, support, or spread of some specific form of religious doctrine or belief.

"2. The second is when the property is held by a religious congregation which, by the nature of its organization, is strictly independent of other ecclesiastical associations, and so far as church government is concerned, owes no fealty or obligation to any higher authority.

"3. The third is where the religious congregation or ecclesiastical body holding the property is but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete, in some supreme judicatory over the whole membership of that general organization."

■ It is our opinion that the Methodist Church falls within the third group listed in *Watson v. Jones, supra.* Its organization is Presbyterian in form and not Congregational. As a result, it is our opinion that local churches are only parts of the larger body, and no local Methodist church may convert its property to a use not authorized by the superior church government.

The above statement is clearly brought out in two quite recent cases, namely, *Turbeville v. Morris,* 203 S. C. 287, 26 S. E. (2d) 821, decided in 1943, and *Clay v. Crawford,* 298 Ky. 654, 183 S. W. (2d) 797, decided in 1944. We quote from the *Clay* case:

"The most basic of all the Methodist bodies for administrative purposes is the Annual Conference, made up of ministerial and lay delegates from the several congregations within a certain area. It is presided over and is under the administration of a Bishop appointed over it annually by the General Conference. The General Conference is the highest body. It is made up of delegates chosen by the Annual Conferences. Its primary function is legislative. It determines the policy, both ecclesiastical and temporal, and its enactments and fiats constitute the law of the church. All subordinate bodies and church members are bound by them. Any of the several traditional Methodist denominations or branches is, therefore, an integrated unit, the many individual congregations or local churches being but parts

of an ecclesiastical system. The Discipline of the church is the Book of Law. It contains the declaration of faith and practice, or Articles of Religion; the rules of the church respecting the moral conduct of the members, and the legislation defining the form of government, the duties, powers and privileges of the integral parts and their officers."

As further indicating that appellant is but a subordinate unit of the Methodist Church in its basic organization and functioning, we desire to call attention to article IV of its articles of incorporation, which provides in part as follows:

"The affairs of said corporation shall be managed by a Board of Trustees to consist of five to nine members elected and organized according to the laws, customs and usages of the Methodist Episcopal Church . . . ;"

and to article IX, which provides:

"The terms of admission to membership in the corporation shall be covered entirely by the discipline of the Methodist Episcopal Church."

It will be noticed that, under article VIII of the articles of incorporation, all property acquired by appellant is held in trust,

" . . . subject to the doctrines, law, usages and ministerial appointments of the Methodist Episcopal Church, as *from time to time established, made and declared by the lawful authority of said church.*" (Italics ours.)

In the case of *Attorney General v. Armstrong*, 231 Mass. 196, 120 N. E. 678, it is stated:

"In the performance of their duty the trustees in general must conform to the *rules and discipline* of the church, which (to quote the words of the Jackson deed) 'from time to time may be agreed upon and adopted by the Ministers and Preachers of the said Church at their general conference in the United States of America.' It is manifest that these words mean the rules and discipline *existent at the time the question arises,* not those prevailing at the date of the deed in 1806." (Italics ours.)

The allegations of the cross-complaint of the Conference show that it complied with the provisions of paragraph 255 of the 1944 Discipline of the Methodist Church.

Many cases could be cited to sustain the action taken by the Conference herein, under facts such as were pleaded in this case, and while we do not deem it necessary to cite any additional authority, we do desire to refer to the case of *Presbytery of Bismarck v. Allen,* 74 N. D. 400, 413, 22 N. W. (2d) 625.

We have examined the authority cited by appellant, among which is the case of *Marr v. Galbraith,* 238 Mo. App. 497, 184 S. W. (2d) 190, and we are of the opinion such authority is not controlling under the facts in this case.

In conclusion, then, it is our opinion that it appears from the complaint of the Hoffmans that there was in fact a physical abandonment of the premises by appellant; that under the articles of incorporation of appellant and the Discipline of the Methodist Church, respondent Conference acted within its authority in taking the action it did, and that it was entitled to the relief prayed for in its cross-complaint, which relief the trial court accorded to it.

While we are of the view that respondents Hoffman are entitled to the relief granted to them by the trial court because of a physical abandonment of the premises by appellant, we are also of the opinion that those respondents are entitled to such relief because of the action taken by respondent Conference.

The judgment of the trial court is affirmed.

ROBINSON, SIMPSON, SCHWELLENBACH, and HILL, JJ., concur.