[No. 11396. Department One. January 23, 1914.]

## In the Matter of the Estate of ANNA DESCHAMPS.[1]

HUSBAND AND WIFE—WIFE'S SEPARATE PROPERTY—ADVANCES BY HUSBAND—COMMUNITY PROPERTY. The status of the wife's separate real property is not affected by the fact that the husband put some of his money into it for repairs and upkeep, except as subject to a possible equity therefor, which should be disregarded when the amount was small, and was advanced without any understanding that it carried an interest in the property.

SAME—WIFE'S SEPARATE PROPERTY—TRADE—RIGHTS OF HUSBAND. The fact that the wife's separate real estate was traded for property and her husband named as a grantee in the deed, would not give him a community interest in the property, even if he furnished a small amount of property in the trade, where it was apparent that he did not regard the property as his own.

SAME—COMMUNITY PROPERTY—EVIDENCE—SUFFICIENCY. The evidence is insufficient to show that property, the deed to which was taken in the name of a husband and wife, was their community property, where it is undisputed that the greater part of the consideration was a trade for separate real estate belonging to the wife, the husband furnishing property of very little value, without any agreement for an interest, and there was nothing to show that the wife, in directing the deed to be made to herself and husband, intended to give up a half interest in the property or that the husband should assert a greater interest than that represented by his advances.

Appeal from a judgment of the superior court for King county, Frater, J., entered April 23, 1913, upon excepting to the final account of an executor. Affirmed.

*McCafferty, Robinson & Godfrey*, for appellant.

*Scott Calhoun*, for respondent.

CHADWICK, J.—Mrs. Deschamps died on the 24th day of December, 1909, leaving a will, by the terms of which she devised and bequeathed to Mrs. Georgette McCabe, a daughter by a former husband, all of her estate, except certain real property situated in Pierce county, which she willed to her husband, Samuel Deschamps, upon condition that he relin-

[1]Reported in 137 Pac. 1009.

quish any claim which he might have in the estate devised to her daughter. The will was duly admitted to probate and pronounced valid. Deschamps was ordered to elect whether or not he would abide by the provisions of the will. In compliance with this order, Deschamps filed a notice in which he declined to accept under the will, and stated his intention of retaining his separate and community interest in the property so devised. He also filed objections and exceptions to the final account of the executor, which were overruled and denied. On April 23, 1913, the court entered a decree awarding the real property to the daughter Mrs. McCabe. From an order overruling objections and exceptions to the final account, this appeal is taken.

The only question for our determination is whether or not the real property in controversy is community property. Appellant bases his claim upon the facts that, in the deed of conveyance, he is named as joint grantee, that part of the consideration was his separate property, and that the property was acquired during the time he and the deceased were living together.

At the time of her marriage, Mrs. Deschamps was the owner of the Olympic Apartments, in Seattle, Washington. Appellant claims that they were in bad condition, and that he paid out some of his own money in repairs and up-keep. This would not give him a community interest. The status of the property was fixed at the time is was purchased. *Katterhagen v. Meister*, 75 Wash. 112, 134 Pac. 673. It was in Mrs. Deschamps, and unless divested by deed, by due process of law, or the working of an estoppel, must remain there, subject to a possible equity, under the case of *Heintz v. Brown*, 46 Wash. 387, 90 Pac. 211, 123 Am. St. 937, as distinguished in *Dobbins v. Dexter Horton & Co.*, 62 Wash. 423, 113 Pac. 1088, and *United States Fid. & Guar. Co. v. Lee*, 58 Wash. 16, 107 Pac. 870, in which case the court said: "We do not desire to extend the rule in that case." The amount advanced, if any, was small, and entirely disproportionate to the value

of the property and it nowhere appearing that it was advanced with the understanding on the part of either husband or wife that it carried an interest in the property, it ought to be disregarded under the rule of *Worthington v. Crapser*, 63 Wash. 380, 115 Pac. 849.

Mrs. Deschamps traded a one-half interest in the apartments to one Grow for the property in controversy, consisting of two lots and a dwelling house, described as lots 31 and 32, block 174, Gillman's addition to Seattle. This property was mortgaged for $2,286.70, which the grantees assumed. The other half interest in the Olympic Apartments was traded for a farm in Pierce county, also mortgaged. This mortgage was later foreclosed, and with this property we are not concerned. In both these transactions, appellant is named as joint grantee. Appellant says that he gave Grow, as a part consideration for the Gillman addition property, mining stock worth $600, and about $100 in cash, and that he paid out of his own money over $200 in installments to be applied on the mortgage. The stock was not shown to have had any value; it had never paid any dividends. The grantor does not seem to have been sufficiently impressed with its value to consider it a factor in the purchase price. While appellant's testimony as to the payments made by him is undisputed, it is also unsupported. It is probable that appellant furnished the money to make six payments of $35.17 each, as he claims; no receipts were offered in evidence. Assuming, however, that appellant did expend the sums claimed to have been spent, the total amount would not exceed $500. This, under the authorities cited, would not give him a community interest in the property. The conduct of the husband after the death of his wife is such as to warrant a belief that he did not at the time regard the property as his own. The beneficiary under the will met all payments due on the mortgage and in the way of taxes and assessments. He allowed her to proceed apparently on the theory that the property was the sole and separate property of her mother and that she was the sole devisee.

Appellant contends that he is the owner of a community interest in virtue of the deeds. He is named as a common grantee. The testimony upon which the husband depends to show his interest in the property, as he claims it to be evidenced by the deed, is as follows:

"Q. Do you recall how the deed came to be given to Mr. and Mrs. Deschamps, both names being mentioned here? You may have forgotten it, Mr. Grow, I will submit it to you. It is 'Exhibit B' and this is your signature, J. A. Grow? A. Yes. Q. And I call attention to the body of the deed which makes the grantees Samuel Deschamps and Anna Deschamps. Now do you recall anything about why that was? A. Why, as we were going down to get the deed signed up, Mr. Deschamps asked Mrs. Deschamps if she was willing for his name to appear in the deeds both the same, and she said Yes, to have them; he wanted his name in the deed. That was about all there is to it."

Another witness testified as follows:

"I had a client that had two hundred acres over at Roy, Washington, and wanted to get into a rooming house. I was up there one evening at Mr. Deschamps' and Mrs. Deschamps' place and I submitted a proposition to them. So, of course, they says: 'Well, we will look into the matter.' So I brought my client up there to look at the house and after we got through looking through the house, we took a trip over to Roy, Washington, to look at the land. So when we got over there, why, coming back, why everything was satisfactory. We were going to take Mrs. Deschamps along with us at the time but she says the both of them cannot leave the house at the same time. So Mr. Deschamps went over there to look at the land and he explained it to her just as he saw it and, of course, they agreed to make the deal. So we made the deal. Q. Now, what talk, if any, had you with Mrs. Deschamps with reference to making the deal? A. Well, when we got through taking the invoice up at the house and we came down to—I asked them to come down to the office; I had my office at 605, Third Avenue, at that time . . . I asked them to come down to close up the deal. So when the time comes they were down at the time . . . so when the deed was drawn, I asked Mrs. Deschamps, . . . 'Now Mrs. Deschamps, do

you want this deed in your name or in your husband's?' I asked Mr. Deschamps first, 'Do you want this deed in your name?' He says, 'Ask my wife. Whatever she says.' . . . So she says, 'Why certainly,' . . . the property belongs equal between us both."

Appellant's main reliance is put upon the case of *In re Tresidder's Estate*, 70 Wash. 15, 125 Pac. 1034. In that case, the husband attended to the purchase of the property and there was much testimony to support the contention that the property was purchased with the separate funds of the wife. We held that the husband having taken the deed and having directed the insertion of the name of his wife as grantee, together with the recitation that the property was sold and conveyed to the wife "as and for her sole and separate property, use and benefit, and not as community property," was sufficient to bind the husband, and that we would not hear him in denial of his own act. In this case, the consideration paid for the property was almost, if not entirely, paid out of the property of the wife. It is not shown that the wife ever intended to give up a one-half interest in the property or that she understood that her husband could assert a greater interest in the property than would be represented by his advances, if any. The mouth of the wife is closed in death, and there is no one to speak for her unless it be the law, so often declared, that, where property standing in the name of either spouse, or in the name of both spouses, is presumed to be community property, such presumption is rebuttable and that courts will not be bound by the terms of the deed but will look beyond it and ascertain, if possible, the true intent and purpose of the parties. Having this principle in mind, and considering the whole record, we are not satisfied that the husband has made out a case that would warrant this or any other court in decreeing him to be the owner of a one-half interest in the property.

Certain personal property was involved in the trial below. The court in rendering its decision said:

"In the matter of the estate of Anna Deschamps, deceased, the ruling of the court in that case is, that the real property described in the City of Seattle, was the separate property of the deceased. That the furniture was, of course, community property, and it being frittered away and lost, the executor of the estate will be held to account for it, and you may take testimony as to the value of it."

No testimony seems to have been taken as suggested by the court and no findings were made. The state of the record is such that we do not feel warranted in passing on the value of the personal property.

The judgment of the lower court is affirmed.

CROW, C. J., ELLIS, MAIN, and GOSE, JJ., concur.