[No. 14272.  Department One.  April 22, 1918.]

## UNION SAVINGS & TRUST COMPANY OF SEATTLE, *Appellant*, v. WALTER MANNEY *et al.,* *Respondents.*[1]

FRAUDULENT CONVEYANCES—TRANSACTION BETWEEN HUSBAND AND WIFE—PAROL GIFT—EVIDENCE—SUFFICIENCY. In an action to set aside a deed from husband to wife, as fraudulent as to community creditors existing at the time of the conveyance, the evidence is insufficient to show that the property was the separate property of the wife, where the transaction can only be sustained as a ratification of a prior parol gift of the husband's community interest in real estate, taken in the wife's name after coverture and presumptively community property, and upon the faith of which credit was given by existing creditors in the belief that it was community property.

SAME. In such action, where the spouses had nothing at the time of marriage, it was incumbent upon the wife to show that the property was acquired by gift; and an oral gift of real estate, void under Rem. Code, § 8745, requiring the same to be by deed, cannot be shown by the fact that real estate, acquired after coverture, was taken in the wife's name, when less than one-tenth of the purchase price was traced to the wife's separate personal property; since the same was presumptively community property, and its status when acquired remains the same until divested by deed or estoppel; and since if the attempted gift by parol was void, any subsequent attempted ratification by deed would also be void as to creditors then existing.

Appeal from a judgment of the superior court for King county, Jurey, J., entered December 4, 1916, in favor of the defendants, in an action to set aside a deed and subject property to the lien of a judgment, tried to the court.  Reversed.

*McClure & McClure (Walter S. Osborn,* of counsel), for appellant.

*J. B. Murphy* and *H. E. Peck,* for respondents.

ELLIS, C. J.—In this action plaintiff, a judgment creditor of defendants as a marital community, seeks

[1]Reported in 172 Pac. 251.

to set aside a deed from defendant husband to defendant wife conveying block 1, and lots 4 to 9, both inclusive, in block 2, of Manney's addition to the city of Seattle, and to subject that property to the lien of the judgment.

The facts are these: Defendants were married in 1883. They came to Seattle some twenty-seven years ago, at which time, the wife testified, "We had just barely enough money to bring us here." In the fall of 1904, the partnership of W. F. Manney & Company was formed, consisting of defendant Walter Manney and his two sons, W. F. Manney and Henry Manney. The firm was engaged in the business of street and highway contracting until the fall of 1914, when it became insolvent through heavy losses on three contracts. Frequent loans were secured from the plaintiff bank, and it appears that, from February 20, 1907, up to the commencement of this action, the firm was only twice free from debt to plaintiff, once from September 10 to October 9, in 1908, and again from August 5 to August 7, in 1912. Though the fact is disputed, we think the evidence fairly establishes that, at the time of the failure, defendant Walter Manney had overdrawn his account with the partnership to the extent of at least $7,000.

On June 28, 1915, plaintiff recovered a judgment for $4,770 and attorney's fees against Walter, W. F. and Henry Manney and against the three communities composed of these men and their wives. This judgment was based upon three notes of the partners for loans from plaintiff for $1,500, $1,200 and $2,000, respectively, and respectively dated August 17, 1914, August 24, 1914, and October 5, 1914. Upon this judgment an execution was issued and returned unsatisfied. On April 13, 1915, while the action on the notes was pending, Walter Manney executed to his wife a deed of the

property here involved on an expressed consideration of love and affection, with a recital that the deed was given "in confirmation of my act of giving to my said wife all my community interest, if any, in the above described real property at the time said land was purchased and the instrument of conveyance taken in the name of Amelia Manney," and further reciting that it was their intention, at the time of such purchase, that the land should be and remain her separate property, for which purpose the deed was taken in her name and payment was made from sale of property owned by her.

Defendants' version of the acquisition of this property is as follows: In the spring of 1901, they purchased twelve lots in Gilman Park addition to Seattle for a consideration of $960, paying $500 cash and giving a $460 purchase money mortgage. It was then agreed between them that the property was to be the wife's separate property as a gift from the husband. The initial $500 was raised, $95 from the sale of two cows which the wife testified had been given her by the husband, who added $65, and they borrowed $340 from W. F. Manney, who was to receive half of the profits in case of sale. Title was taken in the wife's name, and both defendants executed a mortgage upon the lots for the balance of $460 to one Polhemus, the seller. The husband was not willing to build a home on these lots, and in the fall of 1901 and summer of 1902, they were sold for about $2,100. The money was collected, put in his own bank account and disbursed by defendant Walter Manney. He paid the mortgage and gave one-half the profits to W. F. Manney. The money was mingled with his other funds, which were checked against indiscriminately for these and his general business purposes. Both defendants testified that, when these lots were sold, it was with the understanding that

other property more suitable for a home would be pur-
chased and given to the wife in her name for her "sep-
arate support against any loss he might sustain in busi-
ness." Accordingly they looked at lots 3, 4, 5, 6 and 7
of Leary Acre Tracts, and on October 26, 1901, Walter
Manney entered into a contract with Ferry-Leary Land
Company for their purchase. This contract recited
that the vendor will sell to W. Manney the tracts men-
tioned for a consideration of $800, of which $100 was
to be paid in cash and $700, with interest, in deferred
installments. On this contract seven payments were
made as follows: October 26, 1901, initial payment
$100; January 29, 1902, $100; May 12, 1902, $120; Au-
gust 30, 1902, $200; April 13, 1903, $180; November 24,
1905, $100; April 17, 1907, $74.50; total, $874.50.

Touching these payments the husband testified that
the first was made from proceeds of sale of the Gilman
Park lots, that he did not know where he got the money
with which he made the second, third and fourth pay-
ments, and that he made the fifth from money paid to
him for a homestead relinquishment. The last two
payments were made by Mrs. Manney with checks
drawn on the funds of W. F. Manney & Company,
signed by her husband or W. F. Manney. These pay-
ments matured the contract, and defendant Amelia
Manney took the contract to the land company and, at
her request, the deed was made in her name. Tract 6
was later sold and the other tracts were replatted as
Manney's addition, both of defendants joining in the
dedication as owners and both joining in the acknowl-
edgment. The husband improved the property and
constructed a house on lot 5, block 1, and has paid all
taxes assessed against the lots since the purchase.
W. F. Manney identified checks of the partnership ag-
gregating over $7,000, which checks he testified were
given for labor and material which went into the con-

struction of the house and for taxes and disbursements
in connection with the property.    Mrs. Manney esti-
mated that the house cost only about $3,000, but what-
ever its cost, there is no question that it was paid for
by her husband with community funds drawn from the
partnership business.    He testified that the money he
paid for the lots, excepting the first $100 and the money
he afterwards expended for improvements and taxes,
he considered as gifts to his wife, but it is not pretend-
ed that he ever actually gave her any of this money in
specie.    Over plaintiff's objection, several witnesses
were permitted to testify that, at various times, the
husband had stated that the Gilman Park lots, and sub-
sequently the lots here involved, belonged to his wife.
W. F. Manney, son of the husband and step-son of the
wife, though he had lived with defendants till 1909,
testified that he never heard of any such arrangement
between defendants, that he assumed the property was
community property, and in September, 1911, listed
this property as an asset in the sum of $20,000, in a
statement to the bank.

In June, 1908, defendants joined in the execution of
a mortgage to one Siegley on lot 4 of the Leary Tracts
for a loan of $1,500.    This money was turned into the
firm and credited to Walter Manney's account.    When
lot 6 of the Leary Tracts was sold to one Joslin the
cash payment was treated in the same way.    After-
wards the partnership purchased this tract from Joslin
and took up a mortgage which he had given thereon to
Amelia Manney as a part of the purchase price.    This
$1,200 was credited by the firm to the account of Walt-
er Manney.    None of this money was turned over to
Amelia Manney as owner of the property from which
it was derived, nor was there any evidence tending to
trace this specific money into the improvements on the
property.    It was evidently treated by all parties as

community property of defendants and was placed and remained in the husband's control. On April 5, 1915, Amelia Manney filed a declaration of homestead on lot 5, in block 1, of Manney's addition. This is the lot on which the house stands and is more than double the size of the other lots.

Without making findings of fact or conclusions of law, these being waived, the court decreed that the real estate in question was the separate property of Amelia Manney, and awarded costs to defendants. Plaintiff appeals.

Was the property here involved the separate property of Amelia Manney? This is the sole question presented for our determination. Property acquired by either spouse during the coverture, otherwise than by gift, bequest, devise or descent, is presumptively community property. Rem. Code, § 5917. This property was not acquired by Amelia Manney through devise or descent. It was acquired during the coverture. It was, therefore, incumbent upon her to show by competent evidence that she acquired it by gift. The statute provides that one spouse may give, grant, sell or convey directly to the other, subject to any existing equity in favor of creditors of the grantor, his or her community right in any or all of their community realty, and that a deed made from one spouse to the other of such property shall operate to vest the title in the grantee as separate property. The grantor shall sign, seal, execute and acknowledge as a single person, without joinder therein of the grantee. Rem. Code, § 8766. Another section provides that all conveyances of real estate or of any interest therein shall be by deed. Rem. Code, § 8745. This is the only method provided by statute for the voluntary vesting of the title of community real property in either spouse as his or her separate

property during the coverture. The statute saves the rights of existing creditors.

The deed from Walter to Amelia Manney of April 13, 1915, was made at a time when the appellant was an existing creditor of the community. It requires, therefore, no argument to show that it was void as to the appellant, unless it can be sustained as a ratification by the husband of a prior parol gift of his community interest in the real estate to the wife. But the status of this property as community or separate property became fixed at the time it was purchased. *Katterhagen v. Meister*, 75 Wash. 112, 134 Pac. 673. If it then became vested in the community as community property it must so remain unless divested by deed, due process of law, or the working of an estoppel. *In re Deschamps' Estate*, 77 Wash. 514, 137 Pac. 1009.

It is not claimed that the property here involved ever lost its community character by operation of law, nor can it be claimed that such an effect has been produced through the operation of any estoppel as against appellant as a creditor. The evidence is, we think, conclusive that the appellant had no knowledge or notice, till shortly before the commencement of this action, of any claim that this property was the wife's separate property. It fairly appears that appellant extended credit and made the loans here involved to the firm of Manney & Company in the belief that this property was community property. If, therefore, the property was community property when acquired by the Manneys, it so remains, unless a parol gift of the community interest in real estate from a husband to wife be held valid in law. If the gift was not valid when made, the attempted ratification by the deed of April 13, 1915, was nugatory so far as appellant is concerned. An oral gift of community real estate from one spouse to the other

is void. As said in *Graves v. Graves,* 48 Wash. 664, 94 Pac. 481:

"It was not claimed by the respondent that there was any written agreement, or that any of their property was passed by deed from one to the other, and it is conceded that the property in dispute was acquired and improved by community funds earned after marriage. The statute makes such property community property. Bal. Code, § 4490. An oral agreement that such property might be held as separate property by one of the spouses would be in the face of this statute and also another statute which provides that all conveyances of real estate or any interest therein shall be by deed. Bal. Code, § 4517."

See, also, *Abbott v. Wetherby,* 6 Wash. 507, 33 Pac. 1070, 36 Am. St. 176; *Churchill v. Stephenson,* 14 Wash. 620, 45 Pac. 28; *Woodland Lum. Co. v. Link,* 16 Wash. 72, 47 Pac. 222; *Katterhagen v. Meister, supra.*

Respondents are thus finally driven to the contention that this property was purchased by the wife with her separate funds, the proceeds of the sale of the Gilman Park lots, which lots, it is urged, were purchased with her separate funds given her by the husband. This genesis of her title, as we view it, halts at each step. It is undoubtedly the law that a gift from one spouse to the other of money or other personal property may be proved by parol declaration of the donor if accompanied by delivery to the donee with a complete relinquishment of dominion by the donor. But the evidence in this case falls far short of establishing anything of that kind, save in the instance of the two cows. The husband never at any time gave the wife any money, nor ever expressed to any one an intention to give her any money as such. His sole expressed intention was to buy the land and to give her the land. But he did not give her the land in the only way permitted by law for gifts *inter vivos* of real estate from husband to wife, namely, by his deed to her. True, he permitted the title

to be taken from third persons in her name. But that presumptively vested the title in the community. *Woodland Lum. Co. v. Link,* 16 Wash. 72, 47 Pac. 222; *Carpenter v. Brackett,* 57 Wash. 460, 107 Pac. 359. All of the money which went into the Gilman Park lots, save $95, was community property. The husband contributed $65. Of the balance, the sum of $340 was raised by a loan from W. F. Manney and $460 by a mortgage to Polhemus. These debts were community debts. The proceeds of these loans were community funds. *Katterhagen v. Meister, supra.*

The case of *Graves v. Columbia Underwriters,* 93 Wash. 196, 160 Pac. 436, is not controlling. There the loan was secured by the wife's separate property, admittedly such. Assuming, therefore, that the $95 was a sufficient proportion of the purchase price to impress the property *pro tanto* with the character of separate property of the wife, and that we apply the rule of *Heintz v. Brown,* 46 Wash. 387, 90 Pac. 211, 123 Am. St. 937, rather than the rule of *Worthington v. Crapser,* 63 Wash. 380, 115 Pac. 849, still her separate interest in the Gilman Park lots was less than an undivided one-tenth. Had it been shown that all of the purchase price of the Leary tracts came from the proceeds of the sale of the Gilman Park lots she could have claimed, as her separate property, no more than an undivided one-tenth interest in the Leary Tracts. But this was not shown. On the contrary, only $100 of the proceeds of the Gilman Park lots were ever traced into the Leary tracts. Demonstrably less than one-tenth of this $100 was, in any view of the evidence, her separate property, an amount so small as clearly to invoke the rule *de minimus* as applied in the *Worthington* case and followed in *In re Deschamps, supra.*

The evidence in this case, taken at its face and construing it most strongly in favor of respondents, tend-

ed to establish nothing more than an unexecuted intention on the husband's part to give this land to his wife. The belated attempt to carry out that intention by the deed of April 13, 1915, after appellant had become a *bona fide* creditor without notice of any such antecedent intention, must be held futile. To permit such a latent intention to prevail as against every outward appearance and against the plain terms of the statute would be to open the door to fraud in every case, make titles to real estate rest in parol, and strike a vital blow to all business credit.

The judgment is reversed, and the cause is remanded with direction to enter judgment for plaintiff, saving to Amelia Manney her claim of homestead exemption.

MAIN, PARKER, WEBSTER, and FULLERTON, JJ., concur.