[No. 17765. Department One. April 5, 1923.]

*In the Matter of the Estate of* F. R. BROWN, *Deceased.*

CHLOE D. BROWN, *Appellant,* v. GEORGE SCOFIELD *et al, Respondents.*[1]

HUSBAND AND WIFE (48, 58)—COMMUNITY PROPERTY—PRESUMPTIONS—PROCEEDS OF LIFE INSURANCE PAYABLE TO ESTATE. Property acquired during coverture, in the absence of any evidence to the contrary, is presumed to be community property, and this applies and is conclusive as to the proceeds of the husband's life insurance policy made payable to his estate.

SAME (47-1, 54, 56)—COMMUNITY PROPERTY—PROPERTY ACQUIRED BEFORE MARRIAGE—RENTS AND PROFITS OF SEPARATE PROPERTY—MONEY BORROWED ON SEPARATE CREDIT. Where the original purchase of the stock of a corporation was made from his separate funds, the original investment and the gains and profits made therefrom and from money borrowed on the strength of the husband's separate credit, are his separate estate; the status of both real and personal property being fixed at the time of its acquisition.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered September 22, 1922, in favor of the defendants, in an action by a legatee to determine the status of the property of an estate, tried to the court. Modified.

*W. G. McLaren, R. J. Meakim,* and *P. M. Troy,* for appellant.

*Poe, Falknor & Falknor,* for respondent Margaret Henry.

*Frank C. Owings,* for respondents Scofield et al.

[1]Reported in 214 Pac. 10.

MACKINTOSH, J.—The decedent, Fred R. Brown, was married to the appellant, Chloe D. Brown, on November 15, 1902, he at that time being about fifty-three years of age, and they remained husband and wife until his death on November 27, 1918. A will was left, by the terms of which Brown made several specific bequests, and the balance of his property was left to residuary legatees. The matter presented by this appeal arises on a petition of one of the legatees, who requested the determination of the status of the property of the estate. The widow appeared and claimed the entire estate is community property, and requested that one-half thereof be distributed to her. The executors named in the will take the position that all of the property of the estate is separate property and should be so distributed. The superior court determined the controversy in conformity with the position of the executors. The widow has appealed.

At the time of Brown's marriage, or shortly prior thereto, he was the owner of real and personal property which was of the value of $69,256.67, and from this property, either immediately before or a very short time after his marriage, cash was received in the amount of $77,881.67. After marriage he entered into a number of business transactions which on account of their profitable nature materially increased his assets. He acquired all of the stock of a corporation then known as the New Olympia Hotel Company, the name of which was afterwards changed to that of Semper-Klale Investment Company, and through this company he bought and sold property, borrowed money, and generally conducted his business during his lifetime. He also acquired, through an original investment of $5,000, stock in the Case Shingle Company, and from the dividends on this stock secured a one-half interest, or approximately that, in the Case Shingle and Lumber

Company, and through the sale of the stock of these two Case companies acquired practically all of the stock of the LeBamm Mill Company, and at the time of his death his estate consisted of the following property:

| | | |
|---|---|---:|
| ( 1 ) | Real estate.........................$ | 1,600.00 |
| ( 2 ) | Bank certificates.................... | 9.10 |
| ( 3 ) | Cash on hand....................... | 6,697.17 |
| ( 4 ) | Policy of life insurance, payable to the estate....................... | 4,000.00 |
| ( 5 ) | U. S. Liberty Bond................. | 940.00 |
| ( 6 ) | Promissory note of May Tunin...... | 350.00 |
| ( 7 ) | Promissory note Semper-Klale Inv.. | 60,732.13 |
| ( 8 ) | Promissory note Semper-Klale Inv.. | 5,000.00 |
| ( 9 ) | Semper-Klale Inv. Co. stock......... | 7,774.00 |
| (10) | Open acct. due from Semper-K. Co... | 17,278.74 |
| (11) | Promissory note N. E. Ayer......... | 125,000.00 |
| (12) | Promissory note LeBamm Mill Co... | 40,000.00 |
| | | $269,381.14 |

The restatement of a few fundamental principles announced by this court in regard to the determination of the status of community or separate property will suffice to lay the foundation upon which to determine the matter at issue.

The presumption is that property acquired during coverture is community property. *Yesler v. Hochstettler*, 4 Wash. 349, 30 Pac. 398; *O'Connor v. Slatter*, 46 Wash. 308, 89 Pac. 885; *Guye v. Guye*, 63 Wash. 340, 115 Pac. 731, 37 L. R. A. (N. S.) 186; *Plath v. Mullins*, 87 Wash. 403, 151 Pac. 811; *Volz v. Zang*, 113 Wash. 378, 194 Pac. 409. And the burden is upon the person claiming it to be separate property to establish that as its character. *Guye v. Guye, supra*.

The status of property is to be determined as of the

date of its acquisition. *Heintz v. Brown,* 46 Wash. 387, 90 Pac. 211, 123 Am. St. 937; *Worthington v. Crapser,* 63 Wash. 380, 115 Pac. 849; *Katterhagen v. Meister,* 75 Wash. 112, 134 Pac. 673; *In re Deschamps' Estate,* 77 Wash. 514, 137 Pac. 1009; *Morse v. Johnson,* 88 Wash. 57, 152 Pac. 677; *In re Mason's Estate,* 95 Wash. 564, 164 Pac. 205; *Union Sav. & Trust Co. v. Manney,* 101 Wash. 274, 172 Pac. 251; *Finn v. Finn,* 106 Wash. 137, 179 Pac. 103; *Folsom v.. Folsom,* 106 Wash. 315, 179 Pac. 847; *Rawlings v. Heal,* 111 Wash. 218, 190 Pac. 237; *Halffman v. Halffman,* 113 Wash. 320, 194 Pac. 371; *Dart v. McDonald,* 114 Wash. 448, 195 Pac. 253; *In re Sanderson's Estate,* 118 Wash. 250, 203 Pac. 75; *Jacobs v. Hoitt,* 119 Wash. 283, 205 Pac. 414.

This rule is equally true with regard to personal property as with real property. *Jacobs v. Hoitt, supra.*

If property is once shown to have been separate property, the presumption continues that it is separate until overcome by evidence. *Guye v. Guye, supra.*

Separate property continues to be separate through all its changes and transitions, so long as it can be clearly traced and identified. *Denny v. Schwabacher,* 54 Wash. 689, 104 Pac. 137, 132 Am. St. 1140; *In re Deschamps' Estate, supra; Dart v. McDonald, supra; Merrick v. Appenzeller,* 115 Wash. 181, 196 Pac. 189.

The rents, issues and profits of separate property remain separate property, and profits resulting from money borrowed on separate credit is separate property. *Finn v. Finn* and *Jacobs v.. Hoitt, supra.* Separate property may lose its identity as such by being consolidated with community property. *Volz v. Zang, supra.*

Bearing these principles in mind, it only becomes necessary to apply them to the different items that appear in the inventory of this estate.

In relation to items 1, 2, 3, 5 and 6, the testimony shows that all this property was acquired during coverture, and there is an absence of proof concerning its origin or the source of the money with which it was procured. The presumption therefore attaches that it is community property, and there being no evidence to overcome that presumption, we come to the conclusion that this is community property and, as such, the appellant is entitled to her community interest therein. *Jacobs v. Hoitt, supra.* In regard to item 4, being the proceeds of a life insurance policy, payable to the estate, no proof was introduced and the presumption must be conclusive that it is community property. As was said in *Succession of Buddig,* 108 La. 406, 32 South. 361:

"(Syllabus): A policy of life insurance issued to a married man during the existence of the community and made payable to his executors, administrators and assigns, falls into the community and not his separate estate, on the dissolution of the former by his death. . . . (From opinion):

"The husband is the head and master of the community. . . . The assured having made the policy payable to an 'executor, administrator, or assigns,' it is, in our view, as if it had been made payable to himself. He has no right to transact so as to build up a separate estate to the disadvantage of the community. As to him, primarily all the property belongs to the community. Everything left at the dissolution is presumed common."

Items 7, 8, 9 and 10 refer to the obligations of the Semper-Klale Investment Company and the capital stock of that company. The testimony and the numerous exhibits show that the original purchase of the stock of this company by Brown was from funds which must be conceded to have been his separate property, and that from that original investment, to-

gether with money borrowed on the strength of Brown's separate credit, the profits arose which are represented by the present value of the capital stock and the obligations of the company to Brown's estate. To recite the great number of items that constitute the activities of the corporation over a period of a number of years, with the many purchases, sales, loans and other transactions which went to make it up, would be no more than to merely catalogue the facts which lead us, as they lead the trial court, to the ultimate conclusion that all these assets now in the hands of the executors were the original separate property of the decedent, together with the rents, issues and profits thereon. The testimony satisfies all of the rules laid down in regard to the establishment of the status of property, and these items must be held to be the separate property of the estate.

Items 11 and 12 arise from the investment, as we have already said, in the Case companies and are the result of the sale of Brown's interest in the LeBamm Mill & Timber Company. Item 11 is a note given by the purchaser of Brown's interest in that company, and item 12 represents money loaned by Brown to the LeBamm company during the time he was the controlling owner of that corporation. These two items were the direct result of the original investment in the Case Shingle Company. The original investment was, beyond any dispute, made out of the separate estate of Mr. Brown, and the testimony shows that the increased amount of the original investment is the profit of such investment, and, under the rules, these items must be held to be—and are so held—separate property.

The appellant places a great deal of stress upon the decision of this court in *In re Buchanan's Estate,* 89

Wash. 172, 154 Pac. 129, which is cited upon the point suggested by the following quotation:

"We know of no other rule by which the question of such gains being community or separate property can be determined other than by taking into account the relative contributions, force of the original investment and the personal efforts of a member of the community."

The case, inferentially, would seem to make a distinction between the rents, issues and profits of separate real property and the profits arising from separate personal property, but we find that there is no such distinction to be drawn, and find no authority supporting it. In the *Buchanan* case, *supra*, the court found that the Buchanans treated their property during their lives as community property, and the court held it to partake of that character. In any event, in the *Buchanan* case, *supra*, the separate property was of very small importance, and, as we said in *Jacobs v. Hoitt, supra*:

"In the *Buchanan* case, the original separate investment was so insignificant a contribution to the then value of the property that it could be ignored. Here, we have a substantial capital investment which was separate property."

This quotation answers the contention of the appellant based on the *Buchanan* case, for in the instant case we have an original separate property investment of nearly $70,000. In the *Buchanan* case, the question was asked as to what was the source of the profits and gains; in this case the answer is apparent that it was the separate property of Mr. Brown at the time of his marriage. The trial court, in referring to the *Buchanan* case in his opinion, said:

"This is a very different state of facts from those found in *In re-Buchanan Estate* . . . relied upon

chiefly by the widow. In that case there was a joint expenditure of money in the original investment, four-ninths only, having been furnished by the husband and five-ninths by the wife, the total original investment being but nine hundred dollars, and the unusual increase of some twenty fold was due almost entirely to the personal management and efforts of the husband while a member of the community, these efforts being confined to one enterprise only. In the instant case, the original separate estate of Mr. Brown was over sixty thousand dollars and the profits and gains, the result of reinvestments of the dividends and proceeds of sales traceable almost entirely to the original fund, account for the estate which was left at the time of his death. The relative contributing efforts of the original investment and the personal efforts of the members of the community are vastly different in the two cases.''

Some errors are alleged in the reception of evidence, and a motion has been made in regard to striking respondent's brief and supplemental abstract. We do not feel that there is sufficient merit in these assignments to detain us.

Under the general principles that we have quoted, it clearly appears to us that the trial court was correct in arriving at the conclusion that the items from 7 to 12, inclusive, were separate property of the decedent, but was in error in holding that the items 1 to 6, inclusive, were not community property. For that reason the judgment of the trial court is modified to the extent indicated.

MAIN, C. J., BRIDGES, HOLCOMB, and MITCHELL, JJ., concur.