# HILL Et Ux. *v.* DU PRATT

No. 2805

February 5, 1929.

274 P. 2.

*Wm. Forman, Wm. Forman, Jr.,* and *Ryland G. Taylor,*
for Appellant:

*Cooke, Stoddard & Hatton,* for Respondents:

## OPINION

By the Court, DUCKER, C. J.:

In this action the respondents, the plaintiffs in the court below, prayed for a money judgment in the sum of $1,700 against the defendants, Monahans, that the deed and bill of sale mentioned in the complaint be decreed to be mortgages upon the real and personal property therein described, and for a foreclosure thereof and a deficiency judgment. The appellant, Du Pratt, was a party defendant, it being alleged in the second amended complaint, among other matters in the same connection, that he has some interest in the property involved, accrued since the lien of the said deed and bill of sale made to plaintiffs. Most of the evidence was introduced by respondents, and the facts are, in the main, undisputed.

It appears from the evidence that the house and lot involved, which are situated in the city of Tonopah, were formerly owned by one Irving MacDonald, a resident of Porterville, Calif., and for a number of years prior to the transactions hereinafter mentioned had been rented and occupied by the defendant J. E. Monahan and his wife, L. M. Monahan. On or about the date thereof MacDonald sent to Monahan the following letter:

Porterville, Cal., May 4, 1925.

"Mr. J. E. Monahan, Tonopah, Nevada.

"Dear Mr. Monahan: I have decided to sell the place you are occupying for the sum of one thousand dollars net to me. Cash. This offer subject to immediate acceptance. Should you care to take advantage of it you may wire me at my expense. The money to be sent to the First National Bank here, where deed will be delivered.

I am making the same offer to S. R. Moore & Co. with their commission to be added to the net price.

"Yours very truly,
"Irving MacDonald."

On or about May 14, 1925, Monahan received a telegram from MacDonald reading as follows:

"Porterville, California.
"151 P May 14 1925.
"Mr. J. E. Monahan, Tonopah, Nev.
"Bank here reports no money received yet. Is deal off. Irving MacDonald, 2.31 P"

In response to the foregoing telegram, Monahan on the 15th of May, 1925, wired MacDonald as follows:
"5/15/25.
"Irving MacDonald, Rt. 1, Box 58, Porterville Cal.
"Mailing check thousand dollars. Have deed made name L. M. Monahan. I assume this included rear house lot one. L. M. Monahan."

Monahan signed his wife's name to the telegram. The bank at MacDonald's request returned the check to Monahan, and he was notified by them by letter of date May 20, 1925, that MacDonald required a draft sent to the bank in his wife's name before the deed would be delivered. On the 15th day of May, 1925, J. E. Monahan borrowed $1,750 from respondents, promising to give them a deed for the house and lot, and bill of sale for the furniture as security for the loan. He told the respondents he would use the money to buy the property from MacDonald. The Monahans executed and delivered to respondents a promissory note for the amount borrowed.

Monahan's account was overdrawn with the First National Bank of Tonopah, and the money borrowed from the respondents was used to pay overdrafts. On May 28th Monahan borrowed $2,500 from appellant, and the next day sent $1,000 of this money by telegraph to the First National Bank of Porterville, Calif., to be paid to Mrs. MacDonald for the property. On the 1st day

of June, Irving MacDonald and his wife executed a deed for the property in favor of Mrs. Monahan. The deed was sent to the First National Bank of Tonopah, and by the bank passed to Monahan. He had it recorded on the 11th day of June. A deed of the real property was executed by Mrs. Monahan to respondents and delivered to them by Monahan on the 27th day of June. It was recorded on the same day. At the same time a bill of sale of the personal property signed by the Monahans was delivered to the respondents. This deed and bill of sale were intended as mortgages to secure the $1,750 borrowed by Monahan from respondents.

On the 18th day of July, 1925, Mrs. Monahan executed a deed of the real property and conveyance of the personal property to appellant in consideration of the cancellation of the debt of $2,500 from them to him.

The court, upon the trial of the cause, held, among other things, that the deed and bill of sale given to the respondents were intended to operate as mortgages to secure the money loaned by them; that the latter was void as a chattel mortgage because it did not comply with statutory requirements, and that appellant was entitled to the personal property sought to be mortgaged; that the real property involved was a gift from Monahan to Mrs. Monahan, and consequently her separate property; and that the intended mortgage was a valid mortgage. Foreclosure of the mortgage deed was decreed.

Several questions are raised by appellant. The principal one is that the evidence is insufficient to establish a gift of the real property from Monahan to his wife.

■ Respondents recite respectable authority to the effect that a husband may make a valid gift of real property to his wife by procuring a third person to make a conveyance direct to her, and contends that the facts of this case show a valid gift of this character. The respondents argue that the acts and expressions of Monahan show a gift of the purchase money to Mrs. Monahan, or are sufficient to impress the consideration, namely, the money, with a separate character. It is

conceded that the money borrowed from the appellant belonged to the community. Consequently it cannot be held that such money or property purchased with it was transmuted into separate property without convincing proof. Lake v. Bender, 18 Nev. 361, 4 P. 711, 7 P. 74; Laws v. Ross, 44 Nev. 405, 194 P. 465; Jones v. Edwards, 49 Nev. 299, 245 P. 292.

■ We think the evidence of a gift, either of the purchase money or of its conversion into a consideration of a separate character as claimed by respondents is too slight to satisfy the foregoing rule.

Monahan nowhere asserts in his testimony that he made his wife a gift of the purchase money, and his testimony on the whole negatives any purpose to do so. On this phase of the case he testified as follows:

"A. As I gave the house to Mrs. Monahan that is why she signed the deed.

"Q. You mean, signed the mortgage. A. Yes, the mortgage.

"Q. When did you give your interest in the property to her? A. When I borrowed the money from Du Pratt.

"Q. That was May 28, 1925? A. Yes.

"Q. How did you give it to her? A. Just to say the house was hers. I passed the deed to her and said it was hers.

"Q. What deed? A. The MacDonald deed.

"Q. Did the deed come to you? A. It came to the Nevada First National Bank and passed to me by Mr. Raycraft.

"Q. You intended to pass all your right in the property to her? A. Yes, I made her a present of the home."

He stated, as appears above, that he gave his interest in the property to her at the time he borrowed the money from appellant. He did not mean by this statement, however, that he gave the purchase money to her, for when asked how he gave his interest to her, he said: "Just to say the house was hers. I passed the deed to her and said it was hers."

■ Stress is placed on the fact that the day after he borrowed the money from appellant he deposited

the purchase money with the telegraph company in her name for transmission to the First National Bank of Porterville. This, at the most, is only slight evidence of an intent to make a gift of the purchase money, and falls far short of that convincing proof required by the rule of community presumption. On the other hand, it is entirely outweighed by the following testimony given by Monahan: "I will say this, if it will clear up matters for you, while the $1,750 was borrowed from Mrs. Hill and placed in the bank, no part of this money was ever paid for the house. My object in borrowing the $2,500 from Du Pratt was to pay Mrs. Hill the $1,750 and allow the house and all to remain in the hands of Du Pratt." This testimony, besides tending strongly to disprove any intent to make his wife a gift of the purchase money, indicates that he had not at that time formed any purpose of giving the real property to his wife, for he said he intended to allow the house and all to remain in the hands of Du Pratt. The evidence fails also to show a valid gift of the real estate.

██ The utmost effect we can give to the evidence on this point is that Monahan formed the purpose of giving the real property to his wife, but did not do so until the MacDonald deed came into his hands from the bank in Tonopah. It was then he said he passed the deed to her and said the house was hers. The evidence discloses only an intent and attempt by Monahan to give the house and lot to her in that way at that time. The effect of this, however, was merely to attempt a transfer of real property by parol. Such transfers are forbidden by our statute. Section 1069, Rev. Laws of Nevada. When Monahan passed her the deed; the title to the property had already passed to the community. The title vested in the community when the deed was delivered to the First National Bank of Porterville, the depository named by MacDonald in his offer of sale, and accepted by Monahan. By reason of the provision cited, the intention manifested by

Monahan, when he passed the deed to Mrs. Monahan, to give her the real estate, could not operate to divest the community of the title. Carpenter v. Brackett, 57 Wash. 460, 107 P. 359. See, also, Union Savings & Trust Co. v. Manney, 101 Wash. 274, 172 P. 251.

The mortgage deed executed by Mrs. Monahan was consequently void.

It is ordered that the judgment be and the same is hereby reversed, and the cause is remanded, with instructions to the lower court to enter judgment in favor of appellant in accordance with this opinion. The appellant to recover his costs.