**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 24, 2022

*Gonzáles, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 24, 2022

*Erin L. Lennon*
ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of ) | |
| ) | No. 100045-6 |
| DANIEL Y. WATANABE, ) | |
| ) | |
| Petitioner, ) | |
| ) | En Banc |
| and ) | |
| ) | |
| SOLVEIG H. WATANABE, ) | |
| ) | |
| Respondent. ) | Filed: March 24, 2022 |
| _____ ) | |

MADSEN, J.—Daniel Watanabe and Solveig (Watanabe) Pedersen[1] divorced in 2016. During the marriage, Pedersen inherited a large sum of money and land after her mother passed away. At their dissolution trial, the court held that various real properties were Pedersen's separate property, despite the fact that both Watanabe's and Pedersen's names were on the title for the properties. Watanabe appealed, arguing the trial court erred by failing to apply the joint title gift presumption since the property was acquired in both of their names during marriage. Watanabe also argued the trial court erred by

---

[1] We use Pedersen throughout this opinion to avoid confusion between the parties.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

allowing extrinsic evidence of Pedersen's intent when she quitclaimed her separate property to the community. The Court of Appeals affirmed, holding that the gift presumption does not apply, regardless of whether the property was acquired before or during marriage. The Court of Appeals also held that extrinsic evidence was appropriately admitted to determine whether Pedersen intended to transmute separate property, not to dispute the quitclaim deed itself.

We affirm the Court of Appeals and hold that the joint title gift presumption does not apply regardless of whether the property was acquired before or during marriage. In addition, we hold that extrinsic evidence may be admitted to explain the intent of the parties when signing a quitclaim deed to determine whether a party intended to convert separate property into community property.

## FACTS

Daniel Watanabe and Solveig Pedersen (formerly Watanabe) married in 1999. In 2000, Pedersen's mother died and left half of her estate to Pedersen. Thereafter, Pedersen and Watanabe moved to a property in Arlington that Pedersen's mother had owned. Between 2000 and 2005, Pedersen inherited around $250,000 from her mother's estate, with additional distributions scheduled for future years. She also inherited a 50 percent interest in the Arlington property. The couple started a business named Olivia Farms Inc. (OFI) in 2003 to breed and train horses. They were 50/50 owners of the corporation. OFI was not a profitable business, incurring net losses each year.

No. 100045-6

In 2005, Pedersen and Watanabe decided to buy property in Ford, Washington to continue their business raising Norwegian Fjord horses. To finance the purchase of the Ford property, they obtained a loan from Flagstar Bank, secured by the Arlington property. One of the conditions to obtain the loan was that Pedersen add Watanabe to the title of the Arlington property because Pedersen had no credit history at that time. Pedersen quitclaimed her interest in the Arlington property to herself and Watanabe "to establish community property." Ex. R-155 (capitalization omitted). Pedersen does not recall signing the quitclaim deed and claims she only did so because the loan required it. According to Pedersen, the loan was intended to be a short-term loan until the Arlington property could be sold. Pedersen also testified she never intended to convert Arlington to community property and did not remember signing the quitclaim deed.

Pedersen and Watanabe made monthly mortgage payments of $2,877 from a joint checking account for just over a year. Once the Arlington property sold, Pedersen applied her half of the sale to pay off the balance of the Ford property mortgage.

In 2008, Pedersen received another distribution of around $700,000 from her mother's estate. Around that time, the couple purchased additional land adjacent to the Ford property with funds from Pedersen's separate account. In 2009, they built a home on the Ford property. From 2005 to 2012, both Pedersen and Watanabe spent time improving the farm and running the business. In 2012, Watanabe returned to work as a teacher and his salary went into the couple's joint account. Between 2010 and 2014, Pedersen deposited roughly $370,000 into the couple's joint account and $170,000 into

3

No. 100045-6

OFI's bank account. In 2013, Pedersen received her final distribution from her mother's estate of around $635,000.

The couple decided to purchase a property in Clayton, Washington in 2015. They bought three adjacent parcels of land. Two of the parcels were paid directly from Pedersen's separate account, with the third paid for by their joint account. Both Pedersen and Watanabe were included on the warranty deeds for all three parcels. The couple separated in July 2016 and later divorced.

At trial, the superior court determined the Ford property was separate property. The court concluded the parties did not have sufficient community income or cash flow to pay anything toward the Ford purchase. The court noted that OFI operated at a loss and that the payments could not have come from Watanabe's earnings or from prior accumulated savings. The court also concluded that based on testimony and exhibits at trial, Pedersen did not intend to convert her separate property in the Arlington home to community property despite the fact that both spouses' names were on the warranty deed. The court held that the additional Ford property and two of the Clayton parcels were separate property because they were paid for entirely from Pedersen's separate property, but that the third Clayton parcel was community property because it was paid for with the couple's joint savings account. Finally, the court concluded that characterization of property is only one factor to consider and emphasized the broad discretion the trial court may have to ensure the property is divided equitably considering the source of funds for the parties' acquisitions.

4

No. 100045-6

Watanabe appealed, assigning error to the trial court's characterization of the Ford and Clayton properties as Pedersen's separate property. The Court of Appeals affirmed, holding that the funds were traceable to Pedersen's separate property, and applied *In re Estate of Borghi*, 167 Wn.2d 480, 219 P.3d 932 (2009), for the proposition that the joint title gift presumption is no longer applicable. *In re Marriage of Watanabe*, No. 36619-7-III (Wash. Ct. App. July 1, 2021) (unpublished), http://www.courts.wa.gov/opinions/pdf/366197_unp.pdf. In addition, the Court of Appeals noted that even if the trial court's characterization of the Ford property was error, Watanabe failed to show that the property would have been divided differently if properly characterized.

Watanabe also argued that the trial court erred by allowing extrinsic evidence to show Pedersen's intent regarding the quitclaim deed for the Arlington property. The Court of Appeals noted that this issue was not preserved on appeal but exercised its discretion to address the argument. The court ruled that the extrinsic evidence was not introduced to dispute the fact that Pedersen had quitclaimed the deed to Watanabe but, rather, to show her intent in regard to the character of the property.

Watanabe filed a petition for review, arguing the Court of Appeals erroneously expanded *Borghi* beyond this court's intended scope and erred by holding that extrinsic evidence may be admitted to clarify an unambiguous deed. We granted review.

No. 100045-6

ANALYSIS

Joint Title Gift Presumption

A trial court's characterization of property is a mixed question of law and fact. *In re Marriage of Kile*, 186 Wn. App. 864, 876, 347 P.3d 894 (2015) (citing *In re Marriage of Martin*, 32 Wn. App. 92, 94, 645 P.2d 1148 (1982)). Factual findings, including time of acquisition, method of acquisition, and intent of the donor, supporting the characterization are reviewed for substantial evidence. *Martin*, 32 Wn. App. at 94. The characterization of property is reviewed de novo as a question of law. *Kile*, 186 Wn. App. at 876; *In re Marriage of Schwarz*, 192 Wn. App. 180, 191-92, 368 P.3d 173 (2016).

Here, the Court of Appeals held that the trial court's findings are a verity on appeal because Watanabe did not assign error to these findings. We agree. Thus, we review Watanabe's claim that the property was improperly characterized de novo relying on the trial court's findings of fact.

This court held, in *Borghi*, 167 Wn.2d at 490, that no presumption arises from the names on a deed or title in the context of characterizing property as community or separate property. In *Borghi*, the wife purchased a parcel of real property before marriage. *Id.* at 482. Shortly after marriage, she executed a special warranty deed to "husband and wife." *Id.* The couple lived on the property and used it to secure a mortgage a few years later. *Id.* After the wife's death, there was a dispute over whether the property was community or separate property. *Id* at 482-83.

6

No. 100045-6

On review, this court pointed out the inherent conflict between the joint title gift presumption and the presumption that separate property remains separate property absent clear and convincing evidence of intent to convert the property to community property. *Id.* at 489-90.[2] The court concluded that the name on a deed or title does not determine the separate or community character of the property nor does it provide much evidence. *Id.* at 489. Rather, there must be other evidence, such as a quitclaim deed transferring the property to the community, a valid property agreement, or some other writing evidencing intent. *Id.*[3]

Watanabe argues that the *Borghi* court's rejection of the joint title gift presumption applies only to situations where one spouse owned separate property prior to marriage and then added the other spouse to the title. The main holding in *Borghi*, he contends, is that "'the characterization of property is determined at the date it is acquired'." Suppl. Br. of Pet'r Daniel Watanabe at 5 (quoting *Borghi*, 167 Wn.2d at 484). Thus, Watanabe argues the trial court inappropriately extended *Borghi* to property acquired during marriage.

Watanabe urges that *In re Marriage of Skarbek*, 100 Wn. App. 444, 997 P.2d 447 (2000), not *Borghi*, is the controlling precedent here. *Skarbek*, he claims, stands for the

---

[2] The majority opinion in *Borghi* received only four votes, but Justice Madsen concurred, agreeing with the lead opinion that inclusion of the husband on the deed did not by itself demonstrate a sufficiently clear intent by the wife to transform her separate property into community property. In her concurrence, Justice Madsen argued there was no need to determine what type of evidence is necessary to overcome the separate property presumption given the facts of the case.

[3] The assertion regarding the specific evidence required to overcome the presumption of separate property received approval from only a plurality of the court.

7

No. 100045-6

proposition that property purchased in the name of both parties during marriage, where separate property is used to assist in the purchase, permits the presumption that the transaction was intended as a gift.

In response, Pedersen points out that *Borghi* rejected prior case law, including *Skarbek*, which allowed a joint title gift presumption for separate property when the title is changed from the name of one spouse to both spouses. Pedersen argues the conflict between the joint title gift presumption and the separate property presumption that the *Borghi* court highlighted exists regardless of whether or not the property was acquired before or during marriage. We agree.

*Skarbek* cites directly to *In re Marriage of Hurd*, 69 Wn. App. 38, 51, 848 P.2d 185 (1993), *overruled in part by Borghi*, 167 Wn.2d at 482, to say that property acquired during marriage with separate funds is a gift to the community. *Skarbek*, 100 Wn. App. at 446. But *Borghi* explicitly rejects *Hurd* to the extent that it endorses a joint title gift presumption.

If property is separate property as of the date of acquisition, it will remain separate property through all of its changes and transitions as long as it can be traced and identified. *Baker v. Baker*, 80 Wn.2d 736, 745, 498 P.2d 315 (1972); *In re Witte's Estate*, 21 Wn.2d 112, 150 P.2d 595 (1944). Once separate property is established, a presumption arises that such property remains separate property absent direct and positive evidence of intent to convert to community property. *Guye v. Guye*, 63 Wash. 340, 115 P. 731 (1911). In Washington, all property acquired during marriage is

8

No. 100045-6

presumptively community property. *Dean v. Lehman*, 143 Wn.2d 12, 19, 18 P.3d 523 (2001); RCW 26.16.030. However, property acquired during marriage by inheritance is considered separate property. RCW 26.16.010; *see also* RCW 26.16.030 ("Property not acquired or owned, as prescribed in RCW 26.16.010 . . . is community property.").

In this case, neither party disputes the fact that the Arlington property was inherited and was separate property at the time Pedersen received it. Moreover, the trial court found there was insufficient community income or cash flow to pay anything from the community toward the Ford property purchase, leading the court to find that the Ford property was purchased with funds deriving from Pedersen's separate property.

The issue, then, is whether Pederson intended to convert her separate property into community property. Prior to obtaining the loan secured by the Arlington property to purchase the Ford property, Pedersen signed a quitclaim deed conveying her claims to the Arlington property to "Daniel Y. Watanabe and Solveig H. Watanabe, husband and wife." Ex. R-155. The quitclaim deed states the purpose is "to establish community property." *Id.* (capitalization omitted).

In *Borghi*, the court explicitly stated "a spouse may execute a quitclaim deed transferring the property to the community." 167 Wn.2d at 488-89 (citing *Volz v. Zang*, 113 Wash. 378, 383, 194 P. 409 (1920)). In *Volz*, the case that the *Borghi* court relied on, the court stated property changes from separate to community property "*when the parties intend such a change* to take place and evidence this intention by a conveyance conforming in all essentials to the requirements of the law affecting the transfer of real

9

No. 100045-6

property." 113 Wash. at 384 (emphasis added); *see also* Harry M. Cross, *The Community Property Law in Washington*, 61 WASH. L. REV. 13, 102 (1986) (noting *Volz* established a spouse may change separate property to community property where the deed clearly expressed the intent and purpose to convert).

Here, the trial court found Pedersen did not intend to transmute her separate property into community property. The facts presented support the trial court's finding.[4]

Next, Watanabe argues that even if the Arlington property is separate property, the Ford property is community property because both parties' names were on the title and the property was acquired during marriage.

However, in *Borghi* this court stated, "There are many reasons it may make good business sense for spouses to create joint title that have nothing to do with any intent to create community property." 167 Wn.2d at 489 (citing *Guye*, 63 Wash. at 353). Moreover, this court has previously held adding a spouse to a mortgage in order to obtain a loan does not automatically make the property community property. *See, e.g.*, *In re Finn's Estate*, 106 Wash. 137, 179 P. 103 (1919) (addition of husband to a loan as required by the lender did not make a separate obligation into a community obligation); *Graves v Columbia Underwriters*, 93 Wash. 196, 160 P. 436 (1916) (wife did not convert separate property to community property by adding husband to mortgage at request of loan company because adding the husband to the loan did not benefit the community).

---

[4] The evidence includes the fact that the deed was drafted by the lender, Pedersen's testimony that she had no recollection of signing the deed and did not have anyone explain what signing would entail, and the loan company's requirement that Watanabe be added to the title.

No. 100045-6

*But see Katterhagen v. Meister*, 75 Wash. 112, 134 P. 673 (1913) (if spouses join in promissory note, the money borrowed becomes community property even if the note is paid back in full by one spouse's separate property); *Rawlings v. Heal*, 111 Wash. 218, 190 P. 237 (1920) (acknowledging *Finn* and *Graves* created an exception to the rule set forth in *Katterhagen*).

The governing factor is whether the property acquired during marriage """"was acquired by community funds and community credit, or separate funds and the issues and profits thereof; the presumption always being that it is community property, but this presumption may be rebutted by proof."""" *Finley v. Finley*, 47 Wn.2d 307, 312, 287 P.2d 475 (1955) (quoting *Katterhagen*, 75 Wash. at 115 (quoting *United States Fidelity & Guaranty Co. v. Lee*, 58 Wash. 16, 22, 107 P. 870 (1910))).

Watanabe argues the loan for the Ford property was acquired with community credit. But the trial court determined the community had insufficient income and thus the funds for the purchase of the Ford property, including the mortgage payments from their joint bank account, derived from Pedersen's separate property interests and/or her inheritance income.

Since the Ford property was acquired strictly with separate funds, the trial court correctly characterized the property as separate property despite the fact it was purchased during the marriage. We reject the distinction Watanabe attempts to draw between applying the joint title gift presumption to separate property owned prior to marriage and property acquired during marriage using separate property. As noted above, the key

11

No. 100045-6

factor is not the timing of the acquisition. If property is characterized as separate

property, then the conflict between the separate property presumption and the joint title

gift presumption exists regardless of when that property was acquired.

Here, Pedersen has presented an alternative reason for including Watanabe on the

title, since the title company required Watanabe to be on the deed in order to obtain the

loan. Thus, Watanabe has failed to show that Pedersen had the intent to convert her

separate property to community property.[5]

Extrinsic Evidence

Watanabe also argues that the Court of Appeals erred by allowing extrinsic

evidence where the plain language of the deed was unambiguous. Washington follows

the objective manifestation theory of contract interpretation. *Hearst Commc'ns, Inc. v.*

*Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Under this rule, the

subjective intent of a contract is irrelevant if intent can be determined by the actual words

used. *Id.*

The Court of Appeals held Watanabe failed to preserve this issue, but the court

nonetheless addressed it. The court held that although Watanabe correctly cited

Washington's contract interpretation law, he misapplied it to the case because the trial

---

[5] In his petition for review, Watanabe argues that the Court of Appeals' decision overlooked the fact that the Clayton properties were also purchased after marriage and in the name of both parties. However, as the Court of Appeals acknowledged in footnote 4 of its opinion, Watanabe failed to adequately argue why the trial court erred in classifying the Clayton properties as separate property. *Watanabe*, slip op. at 9 n.4. Moreover, even if he had done so, his primary argument that the joint title gift presumption should apply is equally inapplicable to these properties.

12

No. 100045-6

court did not allow extrinsic evidence to dispute the fact that Pedersen signed the quitclaim deed to the community. The quitclaim deed was unambiguous and undisputed by both parties. Instead, the trial court allowed evidence to determine whether Pedersen's *intent* in signing the deed was to convert her separate property to community property.

Watanabe makes a similar argument that the plain language of the deed stating its purpose is "to establish community property" is unambiguous and thus any additional extrinsic evidence should have been inadmissible. But the inquiry here was not whether there was a valid quitclaim deed but, rather, whether or not Pedersen had the intent to gift her separate property to the community. The extrinsic evidence was not admitted to dispute what the deed actually says, and the title was not altered here. The evidence was used solely to show Pedersen's intent, which the trial court used to determine the nature of the property.

It is well established that parol evidence may be used to establish the intent of a grantor. *Scott v. Currie*, 7 Wn.2d 301, 308, 109 P.2d 526 (1941) (stating an intent to transmute property may be proved by parol evidence); *In re Estate of Deschamps*, 77 Wash. 514, 518, 137 P. 1009 (1914) (holding that when determining whether property was converted from separate property into community property courts may look beyond the terms of a deed to ascertain the intent and purpose of the parties).

The trial court correctly decided that extrinsic evidence was admissible here.

13

No. 100045-6

CONCLUSION

The joint title gift presumption does not apply in dissolution matters under Washington law, regardless of whether the property was acquired before or after marriage. Extrinsic evidence showing a spouse's intent when signing the quitclaim deed may be considered in determining the character of property in a dissolution proceeding. We affirm the Court of Appeals' decision.

_____
Madsen, J.

WE CONCUR:

_____
González, C.J.

_____
Gordon McCloud, J.

_____
Johnson, J.

_____
Yu, J.

_____
Owens, J.

_____
Montoya-Lewis, J.

_____
Stephens, J.

_____
Whitener, J.

14